(No. 67123.—

PENELOPE CORGAN, Appellee, v. CONRAD MUEHLING, Appellant.

*Opinion filed May 30, 1991.*

BILANDIC, J., took no part.
MILLER, C.J., specially concurring.
HEIPLE, J., dissenting.

Wildman, Harrold, Allen & Dixon, of Chicago (Douglas L. Prochnow and Gary E. Dyal, of counsel), for appellant.

Michael L. Bolos, of Shorewood, for appellee.

John C. Wunsch and Corboy & Demetrio (Todd A. Smith, of counsel), all of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Penelope Corgan, filed this tort action in the circuit court of Cook County against defendant, Con-

rad Muehling. Defendant filed a motion to dismiss counts I, III and IV of plaintiff's third-amended complaint, hereinafter referred to as the complaint (Ill. Rev. Stat. 1981, ch. 110, par. 2—615). The circuit court dismissed count IV, refused to dismiss counts I and III and certified the following questions for appellate review (134 Ill. 2d R. 308):

"1. Whether *Rickey v. Chicago Transit Authority* [(1983), 98 Ill. 2d 546], bars recovery for emotional damages under Count I of the plaintiff's [complaint] against a psychologist for negligence.

2. Whether *Rickey* *** bars recovery for emotional damages under Count III of the plaintiff's [complaint] against a psychologist for negligence."

The appellate court affirmed the circuit court in part, holding that *Rickey* does not bar plaintiff from recovering damages under counts I and III. The appellate court also vacated the circuit court's dismissal of count IV, holding that the Psychologist Registration Act (the Act) (Ill. Rev. Stat. 1981, ch. 111, par. 5301 *et seq.*) implicitly permits plaintiff to maintain a private right of action for nuisance. (167 Ill. App. 3d 1093.) This court granted defendant's petition for leave to appeal (134 Ill. 2d R. 315) and allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiff. 134 Ill. 2d R. 345.

The issues presented for review are whether: (1) direct victims must set forth the pleading requirements established in *Rickey* when stating a cause of action for negligent infliction of emotional distress; and (2) the Act permits plaintiff to maintain a private right of action for nuisance.

As our review of this case is limited to the sufficiency of plaintiff's complaint, all well-pled facts must be accepted as true. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 387.) Plaintiff alleged the

following facts in her four-count complaint. She alleged that defendant publicly held himself out as a registered psychologist, that she came under his professional care in March 1979, and that she ended her professional relationship with him in October 1980.

She further alleged that between March 1979 and October 1980, defendant repeatedly engaged in sexual intercourse with her "under the guise of therapy." Plaintiff also alleged that defendant's conduct caused and still causes her to experience "fear, shame, humiliation and guilt." Moreover, that defendant's conduct compelled her "to undergo more intensive and extensive psychotherapeutic care and counseling."

Count I, entitled "PSYCHOLOGICAL MALPRACTICE," alleged that defendant owed plaintiff "a duty to possess and exercise the skill, knowledge and expertise which would have been exercised by reasonably well qualified psychologists in like circumstances." Count I further alleged that defendant breached this duty by: (1) undertaking psychological care of female patients when he knew from past experience that he was incapable of maintaining appropriate professional objectivity; (2) failing "to establish and maintain an appropriate and proper therapeutic milieu"; (3) failing to recognize and deal with the evolving psychotherapeutic phenomenon of transference and countertransference; (4) permitting his relationship with plaintiff to become a vehicle for the "resolution of his own psychosexual infirmities"; (5) failing to consult with other qualified psychologists or psychiatrists when he realized that his relationship with plaintiff was adverse to her psychological well-being; and (6) failing to refer plaintiff to another qualified psychologist or psychiatrist when he knew or should have known that his therapy was adverse to her psychological well-being.

Count II is not at issue in this appeal, as it involved another party with whom plaintiff settled. Count III, en-

titled "WILLFUL AND WANTON MISCONDUCT," alleged that defendant owed plaintiff "a duty to refrain from willful abuse of his professional relationship" with her. Count III further alleged that defendant breached this duty and demonstrated "a conscious indifference and reckless disregard for [p]laintiff" by repeatedly engaging "in sexual intercourse with her under the guise of therapy."

Count IV, entitled "NUISANCE," alleged that the Act requires psychologists to register with the State and that defendant never so registered. Count IV further alleged that defendant was, therefore, a "public nuisance" pursuant to section 26 of the Act, because he "represent[ed] himself as a psychologist" and rendered "psychological services without having in effect a currently valid certificate." Ill. Rev. Stat. 1981, ch. 111, par. 5327.

In his motion to dismiss counts I, III and IV, defendant: (1) characterized count I as a cause of action for negligent infliction of emotional distress and argued that it should be dismissed because plaintiff failed to set forth the pleading requirements established in *Rickey*; (2) characterized count III as a cause of action for intentional infliction of emotional distress and argued that it should be dismissed for failure to state a cause of action because plaintiff failed to set forth the pleading requirements established in *Knierim v. Izzo* (1961), 22 Ill. 2d 73; and (3) argued that count IV should be dismissed because the Act does not expressly provide a private right of action for nuisance.

In her response to defendant's motion to dismiss, plaintiff argued that defendant mischaracterized count III. She explained that count III stated a cause of action for negligence rather than intentional infliction of emotional distress, because "[w]illfull [*sic*] and wanton misconduct is an aggravated form of negligence." The circuit court then dismissed count IV, refused to dismiss

counts I and III and certified the related questions for appellate review.

The appellate court determined that count I was "in essence for negligence" and that count III was "basically an action for negligence, since *** willful and wanton misconduct is an aggravated form of negligence." (167 Ill. App. 3d at 1096.) Upon concluding that both counts I and III stated a cause of action for negligent infliction of emotional distress, the appellate court affirmed the circuit court in part, holding that *Rickey* did not bar plaintiff from recovering damages under counts I and III. The appellate court reasoned that *Rickey* had no application to plaintiff's case because she was the direct victim of alleged negligent conduct, whereas the *Rickey* plaintiff was a bystander who witnessed a negligent act involving the defendant and the direct victim. Moreover, the appellate court determined that direct victims only need to set forth the elements of negligence—duty, breach, causation and damages—when stating a cause of action for negligent infliction of emotional distress. 167 Ill. App. 3d at 1102.

The appellate court also vacated the circuit court's dismissal of count IV, holding that the Act implicitly permits plaintiff to maintain a private right of action for nuisance. The appellate court reasoned that plaintiff was a member of the class for whose benefit the Act was enacted, that implication of a private right of action was consistent with the purpose of the Act, that the Act was designed to prevent plaintiff's injury, and that implication of a private right of action was necessary to provide plaintiff with an adequate remedy for defendant's violation of the Act. 167 Ill. App. 3d at 1104.

The first issue presented for review is whether direct victims must set forth the pleading requirements established in *Rickey* when stating a cause of action for negligent infliction of emotional distress.

Prior to this court's decision in *Rickey*, Illinois courts were guided by the impact rule when determining whether direct victims and bystanders could recover damages for negligent infliction of emotional distress. (See *Braun v. Craven* (1898), 175 Ill. 401.) The impact rule permitted both direct victims and bystanders to recover damages, if they suffered: (1) emotional distress; and (2) "a contemporaneous physical injury or impact." *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 553.

In *Rickey*, this court disavowed the impact rule, stating:

"The standard that we substitute for the one requiring contemporaneous injury or impact is the standard which has been adopted in the majority of jurisdictions where this question of recovery by a *bystander* for emotional distress has been examined. [Citations.] That standard has been described as the zone-of-physical-danger rule. Basically, under it a *bystander* who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. This rule does not require that the *bystander* suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact. The *bystander*, as stated, must show physical injury or illness as a result of the emotional distress caused by the defendant's negligence." (Emphasis added.) *Rickey*, 98 Ill. 2d at 555.

Defendant argues that this court abandoned the impact rule in *Rickey* and adopted the zone-of-physical-danger rule as the standard under which all plaintiffs can recover for negligent infliction of emotional distress. In reliance on his interpretation of *Rickey*, defendant contends that plaintiff failed to state a cause of action for

negligent infliction of emotional distress. He reasons that she failed to allege that she: (1) was within the zone of physical danger; (2) reasonably feared for her own safety because of his negligence; and (3) suffered physical injury or illness. Defendant further contends that counts I and III must, therefore, be dismissed.

Defendants contentions are, however, misplaced. Although use of the word "substitute" implies replacement of the *impact* rule with the *zone-of-physical-danger* rule, a closer reading of *Rickey* reveals that such a substitution was intended only in bystander cases. As one court explained: "The facts of *Rickey* are those of a typical bystander case and the court uses the word 'bystander' throughout the opinion. In particular, the court expressly puts the issue and the holding in the context of bystander recovery." (*McAdams v. Eli Lilly & Co.* (N.D. Ill. 1986), 638 F. Supp. 1173, 1177.) *Rickey*, therefore, abandoned the impact rule as it applied to bystanders and adopted the zone-of-physical-danger rule as the standard under which they can recover damages for negligent infliction of emotional distress. *Rickey* did not, however, define the scope of negligent infliction of emotional distress as it applies to direct victims. The court in *Rickey* was solely concerned with defining the parameters of *bystander* recovery.

Four years after *Rickey*, the court had the opportunity to reexamine the right to recover damages for negligent infliction of emotional distress in *Siemieniec v. Lutheran General Hospital* (1987), 117 Ill. 2d 230. In *Siemieniec*, the parents of a child born with hemophilia sought to recover damages for negligent infliction of emotional distress on the basis that they would have aborted the child had the defendants provided an accurate genetic diagnosis. The court determined that the parents failed to state a cause of action for negligent infliction of emotional distress, because their complaint

failed to allege the three zone-of-physical-danger rule requirements. *Siemieniec*, 117 Ill. 2d at 261-62.

Defendant argues that the court completely abandoned the impact rule in *Rickey* and, thereby, expanded the zone-of-physical-danger rule to include direct victims. (See *Siemieniec*, 117 Ill. 2d at 261-62; *Robbins v. Kass* (1987), 163 Ill. App. 3d 927; *Poole v. Alpha Therapeutic Corp.* (N.D. Ill. 1988), 698 F. Supp. 1367, 1372; but see *Lewis v. Westinghouse Electric Corp.* (1985), 139 Ill. App. 3d 634, 638-43 (Linn, J., dissenting); *McAdams v. Eli Lilly & Co.* (N.D. Ill. 1986), 638 F. Supp. 1173.) In reliance on his interpretation of *Siemieniec*, defendant contends that plaintiff failed to state a cause of action for negligent infliction of emotional distress and that counts I and III must, therefore, be dismissed.

Defendant's contentions are, however, misplaced. Both the facts in *Siemieniec* and application of the zone-of-physical-danger rule to those facts indicate that the majority likened the parents to bystanders who were witnessing the effects of hemophilia on their child. Furthermore, the *Siemieniec* majority's mere failure to address the direct-victim/bystander distinction does not amount to expansion of the zone-of-physical-danger rule to include direct victims.

Moreover, the zone-of-physical-danger rule is patently inapplicable to direct victims. As Justice Linn so aptly stated:

"The distinction between a direct victim and a bystander is more than just a play on semantics ***. In *Rickey*, the supreme court created a cut-off point beyond which a defendant owes no duty, and beyond which, therefore, the defendant is no longer liable for any injuries inflicted. *** [A] defendant owes a duty to only those persons who suffer emotional distress (and accompanying physical manifestations) as a result of being within the 'zone of danger' created by a negligently caused accident. This zone of danger, because it is cre-

ated by the accident, encircles it; hence, the accident is, in effect, the 'nucleus' of the surrounding zone of danger. A person is within an accident's zone of danger (and able to seek recovery under *Rickey*) when he is sufficiently close to that accident such that he is subjected to a high risk of physical impact emanating *from the accident itself.*" (Emphasis in original.) *Lewis*, 139 Ill. App. 3d at 639-40 (Linn, J., dissenting).

*Siemieniec*, therefore, simply applied the zone-of-danger rule to a bystander case, as the parents suffered emotional distress because of their child's disease. Thus, this court has yet to determine the pleading requirements for a plaintiff who has directly suffered emotional distress due to a psychotherapist's negligence. Clearly, the *Rickey* zone-of-danger test does not apply to the instant case, as the plaintiff was a direct victim and not a bystander.

The essential question is whether the plaintiff properly alleged negligence on the part of the defendant. This court has held:

"A complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. [Citations.] The determination of whether a duty exists— whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff—is an issue of law to be determined by the court." (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525.)

In determining whether to impose a duty upon a defendant, a court will look at various policy considerations, such as the likelihood of harm, the gravity of the injury, the burden of guarding against the injury, and the relationship between the parties. See *Horak v. Biris* (1985), 130 Ill. App. 3d 140, 145.

We find that the facts alleged in this case, if proved, sufficiently establish that the defendant owed a duty to the plaintiff that should be enforced. In her complaint, the plaintiff alleges: that the defendant held himself out as a qualified psychologist, able to render counseling and advice; that she went to the defendant for the purpose of obtaining such counseling and advice; that the defendant was, within the meaning of professional due care, negligent by having sexual relations with her during the course of her treatment; and that the defendant failed to recognize or properly deal with the psychotherapeutic phenomenon of transference and countertransference.

The appellate court has previously examined a factually similar case, and held that the nature of the therapist-patient relationship gives rise to duty on behalf of the therapist to refrain from activity which carries with it a foreseeable, and unreasonable, risk of causing emotional or mental harm to the patient. (*Horak*, 130 Ill. App. 3d at 145.) The court stated:

> "The 'transference phenomenon' *** has been defined in psychiatric practice as 'a phenomenon *** by which the patient transfers feelings toward everyone else to the doctor, who then must react with a proper response, the countertransference, in order to avoid emotional involvement and assist the patient in overcoming problems.' (*Aetna Life & Casualty Co. v. McCabe* (E.D. Pa. 1983), 556 F. Supp. 1342, 1346.) The mishandling of this phenomenon, which generally results in sexual relations or involvement between the psychiatrist or therapist and the patient, has uniformly been considered as malpractice or gross negligence in other jurisdictions, whether the sexual relations were prescribed by the doctor as part of the therapy, or occurred outside the scope of treatment." (*Horak*, 130 Ill. App. 3d at 146.)

Accordingly, in *Horak*, the court held that allegations that a social worker mishandled the transference phenomenon were sufficient to show a breach of a duty of

care. *Horak*, 130 Ill. App. 3d at 146; see also *Simmons v. United States* (9th Cir. 1986), 805 F.2d 1363; *Cotton v. Kambly* (1980), 101 Mich. App. 537, 300 N.W.2d 627; *Roy v. Hartogs* (1976), 85 Misc. 2d 891, 381 N.Y.S.2d 587; *Omer v. Edgren* (1984), 38 Wash. App. 376, 685 P.2d 635 (concluding that sexual relations between psychologists, psychiatrists, psychotherapists and social workers and their clients raise a jury question as to the therapist's malpractice); see generally LeBoeuf, *Psychiatric Malpractice: Exploitation of Women Patients*, 11 Harv. Women's L.J. 83 (1988).

The legislature also appears to have recognized such a duty in a recently enacted statute entitled the Sexual Exploitation in Psychotherapy Act (Ill. Rev. Stat. 1989, ch. 70, par. 801 *et seq.*). Basically, that statute provides that a patient has a cause of action against a psychotherapist for "injury" caused by sexual contact with a psychotherapist. A patient may recover damages from a psychotherapist who is found liable for sexual exploitation. The statute applies only to causes of action arising on, or after, its January 1, 1989, effective date, and therefore is not applicable to this case. Ill. Rev. Stat. 1989, ch. 70, par. 807.

Having determined that the *Rickey* rule does not apply, and that the plaintiff can allege a cause of action for negligent infliction of emotional distress as a direct victim of defendant's psychological malpractice, a question remains as to whether the complaint should be dismissed because the plaintiff did not allege that she suffered a physical injury or illness as a result of her emotional distress. The appellate court found that such a requirement was not necessary to plead the cause of action in this case (167 Ill. App. 3d at 1102). Furthermore, the issue of whether or not there should be a physical manifestation requirement for claims of emotional distress has deeply divided the courts of our sister States. See Comment,

*Negligent Infliction of Mental Distress: A Jurisdictional Survey of Existing Limitation Devices and Proposal Based on an Analysis of Objective Versus Subjective Indices of Distress*, 33 Vill. L. Rev. 781, 801-02 (1988) (hereinafter Comment, *Negligent Infliction*).

There are essentially three reasons why courts have held that a cause of action for negligent infliction of emotional distress will not be allowed absent proof of physical symptom: (1) that emotional distress is inherently difficult to prove and therefore the physical manifestation requirement provides objective evidence; (2) that, in the absence of guarantees of trustworthiness provided by bodily harm, the emotional distress can be too easily feigned or imagined; and (3) where the defendant's conduct has been merely negligent, without an attempt to harm, his fault is not so great that he should be required to compensate for a purely mental disturbance. See, *e.g.*, *Payton v. Abbott Labs* (1982), 386 Mass. 540, 552-53, 437 N.E.2d 171, 178-79; *Reilly v. United States* (R.I. 1988), 547 A.2d 894, 896-98; *Meracle v. Children's Service Society* (1989), 149 Wis. 2d 19, 28-29, 437 N.W.2d 532, 535 (rule exists because of fear of flooding courts with fraudulent claims, and exposing defendants to potentially unlimited liability for emotional disturbance); see Restatement (Second) of Torts §436A (1965).

An increasing number of courts have rejected the physical manifestation of emotional distress requirement. The reasoning of this school of thought is aptly stated by the Texas Supreme Court:

"The requirement [of physical manifestation of emotional distress] is overinclusive because it permits recovery for mental anguish when the suffering accompanies or results in any physical impairment, regardless of how trivial the injury. More importantly, the requirement is underinclusive because it arbitrarily denies court access to persons with valid claims they could prove if permitted

to do so. *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 929, 616 P.2d 813, 820, 167 Cal. Rptr. 831, 838 (1980).

Additionally, the requirement is defective because it 'encourages extravagant pleading and distorted testimony.' *Id.* To continue requiring proof of physical injury when mental suffering may be equally recognizable standing alone would force 'victim[s] to exaggerate symptoms of sick headaches, nausea, insomnia, etc., to make out a technical basis of bodily injury upon which to predicate a parasitic recovery for the more grievous disturbance, the mental and emotional distress she endured.' " *St. Elizabeth Hospital v. Garrard* (Tex. 1987), 730 S.W.2d 649, 652, quoting Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv. L. Rev. 1033, 1059 (1936).

See also *Taylor v. Baptist Medical Center, Inc.* (Ala. 1981), 400 So. 2d 369; *Rodrigues v. State* (1970), 52 Haw. 156, 472 P.2d 509; *Rowe v. Bennett* (Me. 1986), 514 A.2d 802; *Johnson v. Supersave Markets, Inc.* (1984), 211 Mont. 465, 686 P.2d 209; *James v. Lieb* (1985), 221 Neb. 47, 375 N.W.2d 109; *Gates v. Richardson* (Wyo. 1986), 719 P.2d 193; see generally Comment, *Negligent Infliction,* at 802 n.119 (comprehensive list of jurisdictions that follow this rule).

Scientific research has provided modern society with a detailed and scientific understanding of the human mind. These developments have been cogently analyzed by the Hawaiian Supreme Court in *Leong v. Takasaki* (1974), 55 Haw. 398, 520 P.2d 758. In *Leong*, the court noted that there are two responses to traumatic stimuli: primary and secondary. The primary response is an immediate, automatic and instinctive response designed to protect the individual from harm. It is exemplified by emotional responses such as fear, anger, grief, and shock, and is generally short in duration and subjective in nature. *Leong*, 55 Haw. at 411-12, 520 P.2d at 766.

The secondary responses, which may be characterized as traumatic neuroses, are longer lasting reactions that are caused by a person's inability to cope adequately with a traumatic event. This response often is divided into three frequently occurring forms of neurosis: (1) the anxiety reaction, which produces severe tension and can result in nervousness, weight loss, stomach pains, emotional fatigue, weakness, headaches, backaches, a sense of impending doom, irritability, or indecision; (2) conversion reaction, which converts consciously disowned impulses into paralysis, loss of hearing or sight, muscle spasms, or other physiological symptoms which cannot be explained by physical impairments; and (3) hypochondrias reaction, characterized by an overconcern with health, and a fear of illness. *Leong*, 55 Haw. at 412, 520 P.2d at 767.

Clearly, when a primary response is coupled with a secondary one (which would include physical symptoms), damages can be established with a sense of objectivity. However, lack of precision is not a justifiable reason to preclude recovery, as expert witnesses such as psychiatrists, psychologists and social workers are fully capable of providing the jury with an analysis of a plaintiff's emotional injuries. The emotional distress of the primary response is no less real than the distress that is coupled with the physical manifestation of the secondary response and should not be distinguishable at law.

This line of reasoning is fully compatible with this court's findings regarding the tort of intentional infliction of emotional distress under Illinois law. In *Knierim v. Izzo* (1961), 22 Ill. 2d 73, this court found that a plaintiff need not allege physical injury to recover for intentional infliction of emotional distress. The court noted:

> "The stronger emotions when sufficiently aroused do produce symptoms that are visible to the professional eye and we can expect much more help from the men of sci-

ence in the future. [Citation.] In addition, jurors from their own experience will be able to determine whether *** conduct results in severe emotional disturbance." *Knierim*, 22 Ill. 2d at 85.

In the 30 years since *Knierim*, this court has not lost its faith in the ability of jurors to fairly determine what is, and is not, emotional distress. Furthermore, the women and men of the mental health care field have made significant improvements in the diagnosis, description and treatment of emotional distress. Therefore, this court finds that the trial court acted properly in not dismissing the plaintiff's cause of action for failure to allege physical symptoms of emotional distress.

The second issue presented for review is whether the Act permits plaintiff to maintain a private right of action for nuisance.

Section 26 of the Act provides in pertinent part:

"It is hereby declared to be a public nuisance for any person to represent himself as a psychologist or that the services he renders are psychological services without having in effect a currently valid certificate as defined in this Act. The Director or the State's attorney of the county in which such nuisance has occurred may file a complaint in the circuit court in the name of the people of the State of Illinois perpetually to enjoin such person from performing such unlawful acts." Ill. Rev. Stat. 1981, ch. 111, par. 5327.

It is readily apparent that section 26 of the Act does not expressly authorize individuals to bring a private right of action for nuisance. Plaintiff, however, argues that a private right of action should be implied, because the remedies specified in section 26 afford insufficient relief to those injured by violation of the statute.

Implication of a private right of action is appropriate only if: (1) plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purpose of the Act; (3) plaintiff's injury is one

the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act. (See *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 391.) Consideration of these factors supports implication of a private cause of action here.

As far as the first element is concerned, the Act was enacted to protect the public by prohibiting individuals from practicing or attempting to practice psychology without a valid certificate of registration. (Ill. Rev. Stat. 1981, ch. 111, par. 5301 *et seq.*) Plaintiff is certainly a member of the public and is, therefore, a member of the class for whose benefit the Act was enacted. Moreover, she was once the patient of defendant, an individual who allegedly practiced psychology without a valid certificate of registration.

As far as the second element is concerned, the underlying purpose of the Act is to protect the public by prohibiting individuals from practicing or attempting to practice psychology without a valid certificate of registration. (Ill. Rev. Stat. 1981, ch. 111, par. 5301 *et seq.*) The plaintiff was clearly within the class of persons the statute was designed to protect. In addition, the injury she suffered at the hands of an unqualified practitioner was within the range of injuries the statute was designed to prevent.

This court has held that "[w]hen a statute is enacted for the protection of a particular class of individuals, a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned therein." (*Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 155.) The plaintiff analogizes the instant case to *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379. In *Sawyer*, this court implied a private cause of action under the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1977, ch. 111, par. 5701 *et seq.*), allowing

a civil remedy for damages against real estate brokers who engaged in deceptive and fraudulent practices in violation of the Act. In many respects, the Psychologist Registration Act is very similar to the statute at issue in *Sawyer*, in that: both acts are comprehensive licensing and registration schemes designed to protect the public from unqualified and incompetent practitioners; both acts set forth standards for qualification for a certificate of registration, and empower the Department of Professional Regulation to make and enforce regulations in connection with the issuance, revocation and suspension of a certificate of registration; and both acts give private individuals an opportunity to initiate a departmental investigation by filing a complaint. *Sawyer*, 89 Ill. 2d at 390 (citing Ill. Rev. Stat. 1977, ch. 111, par. 5733(b), and Ill. Rev. Stat. 1981, ch. 111, pars. 5317, 5319).

Unlike the statute involved in *Sawyer*, the Psychologist Registration Act does not authorize private individuals who are harmed by violation of the statute to seek any form of civil relief. However, nothing in the statute suggests that the legislature intended to limit the available remedies to those administrative or criminal measures specifically enumerated within the Act. As in *Sawyer*, the implication of a private right of action is within the scope of the Psychologist Registration Act and is therefore consistent with its purpose. It is clearly shown that the the implication of a private right is consistent with the underlying purpose of the Act, and that the injury to the plaintiff was of the type the Act tried to prevent. Thus, the plaintiff has met the second and third parts of the *Sawyer* test.

The fourth part of the *Sawyer* test is whether implication of a civil private right of action is necessary to provide an adequate remedy at law. (*Sawyer*, 89 Ill. 2d at 391.) A civil private right of action for compensatory damages is necessary to uphold and implement the pub-

lic policy behind section 26 of the Psychologist Registration Act, to protect the public from persons who are incompetent and unqualified to render psychological services. See, *e.g., Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172 (private right of action for retaliatory discharge of an employee who filed a workers' compensation claim is necessary to effectuate the purposes of the Workers' Compensation Act).

It is unlikely that patients, injured by unqualified and unregistered psychologists, will initiate or pursue their complaints through the administrative or criminal justice system without a potential for a tangible reward. A private right of action under the Psychologist Registration Act is the only way that an aggrieved plaintiff can be made whole, when a defendant fails to comply with the provisions of the Act. Because an implied private right of action is consistent with the purpose of the Psychologist Registration Act and is necessary to achieve its aim, we conclude that the appellate court properly reversed the circuit court's dismissal of count IV of the plaintiff's complaint.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.

CHIEF JUSTICE MILLER, specially concurring:

I concur in the judgment of the court.

According to the third-amended complaint, the plaintiff sought treatment from the defendant, who held himself out as a licensed psychologist, and the two subsequently engaged in sexual activity during the course of the therapy. The plaintiff alleges that the sexual relationship developed for a variety of reasons connected to the

treatment. The complaint in the present case is thus anchored in a specific factual milieu: that the sexual conduct forming the basis for the plaintiff's action was the consequence of what is alleged to be the therapist's negligent, or willful and wanton, rendition of professional services. It is the therapist-patient relationship that defines the duty in the case at bar.

The defendant makes no challenge to the established principle that a patient who claims injury resulting from sexual activity with a psychotherapist may state a cause of action for professional malpractice. As demonstrated in the *amicus* brief submitted in behalf of the plaintiff, sexual contact between a therapist and a patient during the course of treatment has been universally condemned by the courts and by the psychotherapeutic profession.

With respect to that portion of the third-amended complaint alleging psychotherapeutic malpractice, it should be noted that the only question before us, and the only one resolved by today's decision, is the question certified by the trial judge: whether this court's earlier opinion in *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, bars recovery of damages for emotional distress in the limited set of circumstances alleged here. We have, in the present case, answered that question in the negative. It seems somewhat incongruous, however, to characterize such behavior as negligent or willful and wanton. It is perhaps more accurately described as exploitation, the term adopted by the General Assembly in its recent legislation recognizing a cause of action for sexual misconduct committed by psychotherapists against patients as a consequence of the professional treatment (see Ill. Rev. Stat. 1989, ch. 70, pars. 801 through 807), and I would apply that designation, rather than the labels "negligent" or "willful and wanton," in describing the basis for the plaintiff's cause of action.

JUSTICE HEIPLE, dissenting:

This is a malpractice case against an unlicensed clinical psychologist. The gist of the malpractice claim is that during the so-called course of treatment, a sexual relationship developed between the "patient" and the "psychologist." The "treatment" began in March of 1979 and continued until October of 1980. During this period of time, the plaintiff and the defendant repeatedly engaged in mutually agreeable sexual intercourse. The plaintiff now claims that this sexual relationship disturbed her psychological well-being. She would like the defendant to pay her damages of $3.75 million.

This is not a proper claim for malpractice. It should not be recognized in law. There is no suggestion that the plaintiff in this case was a minor, was mentally retarded or was under any other legal disability. She knew what she was doing and did it.

At the moment the sexual relationship began, the treatment relationship ended. From that time forward, the plaintiff and the defendant were engaged in a frolic, a mutually agreeable detour from any recognized or accepted treatment regimen. To hold the defendant legally liable under such conditions is to countenance a legal form of extortion or blackmail. The law should not permit it. The complaint should be dismissed. Even if such a claim were to be recognized, the attempt to fit this type of claim into a negligence or willful and wanton format is wholly misplaced. There is no allegation that the parties fell off a bed or injured any part of the plaintiff's anatomy. The plaintiff, having willingly engaged in a frolic, now seeks to use the legal system as a tool for a shakedown.

Accordingly, I dissent.