Loren KAPOULAS and Alyssa
Kapoulas, Plaintiffs,

v.

WILLIAMS INSURANCE AGENCY,
INC., an Illinois Corporation, and
Constance Williams, Defendants.

No. 89 C 3554.

United States District Court,
N.D. Illinois, E.D.

Nov. 19, 1991.

As Amended Jan. 10, 1992.

Paul G. Hardiman, Hardiman and Hardiman, P.C., Chicago, Ill., for plaintiffs.

Alfred A. Spitzzeri, Williams & Montgomery, Ltd., Chicago, Ill., for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

On June 27, 1988, in the late morning, Constance Williams was driving east on Old McHenry Road in a car owned by the Williams Insurance Agency. Loren Kapoulas was driving his tractor/trailer westbound on Old McHenry Road. Both were approaching the T-intersection of their road with Darlington Road. There were no traffic stop lights or signs on Old McHenry. The day was clear and traffic was moderate. Constance Williams started a left turn onto Darlington Road. When she did so Loren Kapoulas was traveling about 40–45 m.p. He was 90 to 100 feet away from the Williams car. He applied his brakes, remained in his lane (leaving the lane would have caused a collision with other vehicles) and struck the Williams car. Williams did not recollect whether she stopped or put on her turn signal or saw Kapoulas' vehicle. Kapoulas was not physically injured (except for a bruised and strained arm and shoulder which healed), and Constance Williams survived, but her two children, who were riding with her, did not. Kapoulas sues for emotional distress resulting not from fear for his own safety, but rather from the death of two children.[1]

---

1. In deposition Kapoulas said he was in shock after the collision, "crying a little bit ... because of the little kids.... I was very upset. Little kids died. I mean we were thinking of having kids. We were just getting ready to have kids so it bothered me." Two weeks afterwards, Mrs. Kapoulas told him to see a psychiatrist, "she just couldn't live with me any more. I was just a zombie ... she found a doctor and I went ... I couldn't understand why I lived and the little kids died. Why I wasn't hurt and they were—it just didn't seem fair." He said he was not sleeping, was unable to drive, found it difficult even to ride in a car and became depressed.

The psychiatric opinion evidence is quite clear in one respect—the damage done to Loren Kapoulas arose from the death of the two children and not from any fear for his own safety or well being. "He finds it psychologically depressing to be reminded that he killed two children" "His outlook has been changed—he is

The defendants argue that, on policy grounds, it "is a macabre result to force a mother to compensate a stranger for the stranger's emotional depression that resulted from the death of the ... mother's two children." The argument has rhetorical appeal (and might work to reduce damages) but it is without real merit. A mother who, through negligence, allows her infant to crawl into the street where the child is slain by an auto bears some moral responsibility for both the death of the child and the suffering of the driver of the auto. A tort may harm its author far more than it harms others—this may be tragedy (as it was in this case) or poetic justice or cruel fate—but not a defense to a law suit.

▇▇▇▇ Illinois law offers more hope for defendants' argument that they cannot be held to pay for Kapoulas' emotional distress. The cases have limited recovery for emotional pain first to those who also suffered physical injury, then to those who also suffered physical impact and finally to bystanders who were within a zone of danger of physical harm. *See* the leading case of *Rickey v. CTA*, 98 Ill.2d 546, 75 Ill.Dec. 211, 457 N.E.2d 1 (1983) (rejecting the California decision which permitted recovery for the mere witnessing of injury to another). The emotional distress caused by witnessing injury to another is, without more, not compensable in Illinois. *Siemieniec v. Lutheran General Hospital*, 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987) (a hemophiliac infant); *Gillman v. Burlington Northern Railroad*, 878 F.2d 1020 (7th Cir.1989) (co-employee's injury); *Gihring v. Butcher*, 138 Ill.App.3d 976, 93 Ill.Dec. 631, 487 N.E.2d 75 (1985) (spouse's suicide).

Here the result depends on the reading of two cases. Kapoulas cites *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991). Williams cites *Alexander v. DePaepe*, 148 Ill.App.3d 831, 102 Ill.Dec. 285, 499 N.E.2d 1065 (1986).

Alexander was a passenger in a car driven by her fiance when it collided with a car driven by De Paepe. She was physically injured in the crash and she suffered physical illness from the emotional distress that resulted from the sight of her fiance suffering fatal injury. The Appellate Court found that Illinois law would not have allowed Alexander's claim before the decision in *Rickey v. CTA*. The Court said:

"*Rickey*, rather than creating a new cause of action, merely extended an existing cause of action beyond those bystanders who actually suffered some physical impact to those bystanders who were put at great risk by defendant's negligence ... it did not widen the scope so greatly as to include plaintiffs whose stress arises from watching another's injury or suffering."

*Alexander*, 148 Ill.App.3d at 834, 102 Ill. Dec. at 287, 499 N.E.2d at 1067.

Corgan sought professional treatment from Muehling, who falsely held himself out as a registered psychologist. Under the guise of therapy, Muehling repeatedly engaged in sexual intercourse with Corgan, which caused her to experience fear, shame, humiliation and guilt. The Supreme Court held that the requirement that a plaintiff be within the zone of physical danger applied only to bystanders and not to direct victims and the Court found that Corgan was a direct victim and could sue for emotional distress. *Corgan*, 143 Ill.2d at 306–7, 158 Ill.Dec. at 493, 574 N.E.2d at 606.

The facts in *Corgan* are not the facts here because Corgan's injuries resulted from unlawful physical acts against her person. Her injuries did not arise solely from what she witnessed. The facts of *Alexander* are essentially the facts here. Like Kapoulas, Alexander was in a car that collided with another car and Alexander sought damages for witnessing the death of someone else riding in one of the cars, as does Kapoulas. In both cases there is a special poignancy in the identity of the slain victims; Alexander saw her fiance die and Kapoulas witnessed the death of two

more somber ... he can't ignore that life can be cruel." His affidavit that he did fear for his own safety (filed after defendant moved for summary judgment) contains assertions which did not appear in and are essentially inconsistent with his deposition, and I disregard the affidavit. The assertions in the affidavit are not reflected in the notes or opinions of his experts and treating physicians.

small children. Yet Alexander's claim had more striking circumstances than Kapoulas'. Unlike Kapoulas, Alexander was herself physically injured and the fatal injury was inflicted on someone sitting next to her. The decision in *Alexander* controls this case unless *Corgan* can be said to destroy its validity.

*Corgan* makes one thing clear: a "direct victim" need not be within a zone of physical danger to sue for emotional distress, but a "bystander" must be. The Court did not (and did not need to) define the distinctions between a bystander and a direct victim; *Corgan's* pain was not caused by her observation of the suffering of another. The Court in *Alexander* was quite aware of the distinction between "direct victims" and "bystanders" and found that a passenger in a crashed vehicle was a "bystander" to the suffering of the driver.[2] So, too, is Kapoulas. Illinois law bars his claim for emotional distress and on that claim summary judgment is awarded to defendants.

---

2. In *Corgan,* the Court cited without disapproval its prior opinion in *Siemieniec v. Lutheran General Hospital,* 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987), which affixed "bystander" status where the claim to be a "direct victim" had at least as much logical force and far more emotional power than Kapoulas' claim. Siemieniec was not properly advised by her doctor of genetic risks to the child she was to bear. The child was born with hemophilia and the Court held that neither parent was more than a bystander witnessing the suffering of their child.