**Loren KAPOULAS and Alyssa Kapoulas, Plaintiffs–Appellants,**

**v.**

**WILLIAMS INSURANCE AGENCY, INC. and Constance Williams, Defendants–Appellees.**

No. 92–3993.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1993.

Decided Dec. 15, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 26, 1994.

Paul G. Hardiman, Hardiman & Hardiman, Chicago, IL (argued), for plaintiffs-appellants.

Edward C. Abderholden (argued), Horace W. Jordan, Richard J. Loeffler, Van Duzer, Gershon, Jordan, Petersen & Loeffler, Chicago, IL, for defendants-appellees.

Before BAUER, Circuit Judge, and WOOD, Jr. and ESCHBACH, Senior Circuit Judges.

ESCHBACH, Senior Circuit Judge.

In this tort action between diverse citizens, the district court awarded summary judgment to the defendants, Williams Insurance Company and Constance Williams ("Williams"), on the issue of negligent infliction of emotional distress. 777 F.Supp. 688. Loren and Alyssa Kapoulas ("Kapoulas") now appeal. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand.

On June 27, 1988, Constance Williams and her young son and daughter were driving east on a two-lane highway in a car owned by the Williams Insurance Company. As she turned left and started to cross the westbound lane, Loren Kapoulas, driving a tractor-trailer rig, collided with her car. Ms. Williams survived the accident, but her two children did not. Kapoulas suffered only a bruised shoulder. After the accident, however, Kapoulas suffered psychiatric and emotional problems evidenced by insomnia, nightmares, lethargy, loss of libido, facial twitching, loss of appetite and weight, shaking and sweating. The precise cause or source of this emotional distress is the primary issue in this appeal.

Kapoulas and his wife Alyssa, who correspondingly claims loss of consortium resulting from Kapoulas' emotional distress, settled all other claims against Williams for lost wages, bodily injury, and property damage to the tractor-trailer. Their settlement did not contemplate any damages for mental or emotional suffering, and Kapoulas' only remaining claim is for negligent infliction of emotional distress.

We review summary judgments *de novo* and resolve any doubt as to the existence of a material fact in favor of the non-moving party. *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1477 (7th Cir.1990). Both parties agree that we are to interpret and apply Illinois law. Unfortunately, under the Illinois law applicable to this case, our task is more simply stated than done. Like several other jurisdictions, Illinois' law regarding negligent infliction of emotional distress has undergone several transformations. Prior to the Illinois Supreme Court's decision in *Rickey v. Chicago Transit Authority*, 98 Ill.2d 546, 75 Ill.Dec.

211, 457 N.E.2d 1 (1983), "recovery for negligently caused emotional distress suffered by the direct victim or by a bystander who witnesses the injury of another [had] been consistently denied unless it was accompanied by a contemporaneous physical *injury* to or *impact* on the plaintiff." (Emphasis supplied.) *Id.* 75 Ill.Dec. at 212, 457 N.E.2d at 2 (citing *Braun v. Craven,* 175 Ill. 401, 51 N.E. 657 (1898); *Carlinville National Bank v. Rhoads,* 63 Ill.App.3d 502, 20 Ill.Dec. 386, 380 N.E.2d 63 (1978); *Kaiserman v. Bright,* 61 Ill.App.3d 67, 18 Ill.Dec. 108, 377 N.E.2d 261 (1978); and *Neuberg v. Michael Reese Hosp. & Med. Ctr.,* 60 Ill.App.3d 679, 18 Ill.Dec. 62, 377 N.E.2d 215 (1978)). Illinois courts refer to this as the "impact rule." In *Rickey,* the Illinois Supreme Court went a step beyond the impact rule and adopted the "zone of physical danger" rule. The zone of danger rule widened the class of plaintiffs that could recover for negligent infliction of emotional distress to include those bystanders "in a zone of physical danger and who, because of the defendant's negligence, [had] reasonable fear for [their] own safety" which caused them emotional distress, and who could demonstrate physical injury or illness resulting from the emotional distress. *Rickey,* 75 Ill.Dec. at 215, 457 N.E.2d at 5. Thus, after *Rickey,* a bystander need not prove impact or injury as a prerequisite to recovering emotional distress damages, but he must nevertheless demonstrate that he was in the zone of danger and that his emotional distress resulted from a fear for his own safety. These two requirements—a dangerous proximity to the accident and a fear for one's own safety—suggest that even though the Illinois Supreme Court desired to permit certain bystanders to recover for emotional distress, it correspondingly intended to limit the class of unimpacted or uninjured bystanders to those who could demonstrate a fear for their own safety.

Subsequent Illinois decisions have construed *Rickey*'s zone of danger rule to apply only where a bystander claims emotional distress. When a direct victim claims emotional distress, the impact rule still applies. *See Corgan v. Muehling,* 143 Ill.2d 296, 158 Ill. Dec. 489, 491–92, 574 N.E.2d 602, 604–05 (1991). Therefore, the distinction between

direct victim and bystander takes on some importance in determining whether to allow recovery for emotional distress. If a plaintiff is solely a bystander, *Rickey* presents a significant barrier to recovery. On the other hand, if a plaintiff is a direct victim and the impact rule applies, recovering emotional distress damages is less arduous. In this case, the Kapoulas argue that Loren Kapoulas was a direct victim of Constance Williams' negligence and therefore *Rickey* does not apply to him. The defendants do not dispute that Kapoulas was in part a direct victim, but they also contend that Kapoulas was also a bystander for purposes of evaluating his emotional distress. They argue that his emotional distress resulted from *witnessing* the deaths of the two children rather than from a fear for his own safety. Therefore, they contend, *Rickey* does not permit recovery.

■ The district court held that Kapoulas was a bystander and denied plaintiffs' requests for relief under *Rickey* because Kapoulas could not sufficiently demonstrate that his emotional distress arose from a fear for his own safety rather than a concern for the two children. However, the district court incorrectly assumed that a plaintiff is *either* a direct victim *or* a bystander, and therefore did not consider the possibility that Kapoulas could have been both a bystander *and* direct victim. In so doing, the district court only applied the *Rickey* analysis and did not consider the possibility that some of Kapoulas' emotional distress resulted from being a direct victim which would have necessitated an alternative analysis under the impact rule. As shown below, several Illinois cases illustrate that a plaintiff may be both a direct victim and a bystander in the same incident for the purposes of determining the source of his emotional distress. Moreover, we disagree with the district court and the defendants that Kapoulas' emotional suffering came solely from his status as a witness. Our examination of the record reveals that at least part of his emotional distress resulted from his direct involvement as a participant in the accident. This, we conclude, was of such importance in determining plaintiffs'

ability to recover that summary judgment was inappropriate.

Defendants cite two Illinois decisions, *Alexander v. De Paepe*, 148 Ill.App.3d 831, 102 Ill.Dec. 285, 499 N.E.2d 1065 (1986), and *Carlinville Nat'l Bank v. Rhoads*, 63 Ill. App.3d 502, 20 Ill.Dec. 386, 380 N.E.2d 63 (1978), with fact patterns remarkably similar to this case. Both demonstrate that a plaintiff may be both a direct victim and a bystander in the same accident.[1] In *Carlinville*, decided *prior* to *Rickey*, a wife sought emotional distress damages for an accident involving herself and her husband. She made separate claims for relief. First, she sought damages for her own physical injuries and the mental trauma associated with those injuries. Next, she sought damages for her emotional distress which resulted from witnessing her husband's death as a passenger in the same car. Even though the plaintiff was a direct victim in the accident, the court nevertheless denied her second claim for emotional distress damages because that emotional distress arose "solely as the result of witnessing peril or harm to another." *Id.* 20 Ill.Dec. at 389, 380 N.E.2d at 66.

In *Alexander*, decided *after Rickey*, the plaintiff separately requested damages for her own injuries resulting from an automobile accident, and her emotional distress which resulted from witnessing the fatal injuries to her fiance. *Id.*, 102 Ill.Dec. at 286, 499 N.E.2d at 1066. As in *Carlinville*, the *Alexander* court denied her request for emotional distress damages, but in this case the court relied on *Rickey*. It held that *"Rickey* does not support a cause of action for negligent infliction of emotional distress based only on witnessing injury to a direct victim. The bystander's action arises only when he shows that his emotional distress arose from fear for his own well-being." *Id.*, 102 Ill.Dec. at 288, 499 N.E.2d at 1068. Therefore, it is not without precedent that we separate Kapoulas' emotional distress which resulted from his actual involvement in the accident (from his impact or injury) from his emotional distress caused by witnessing the death of the two children.[2]

Defendants cite *Alexander* and *Carlinville* for the uncontested proposition that mere witnesses cannot recover for emotional distress unless they satisfy the *Rickey* analysis. However, the real issue here is whether Loren Kapoulas' emotional distress arose strictly from his status as a witness or arose from a combination of his status as a witness and his direct participation in the accident as a victim.

---

1. Many of the difficulties in this case could have been avoided were it not for inartful pleading. In *Carlinville* and *Alexander*, the plaintiffs pleaded one claim of relief for their physical injuries and emotional damages resulting therefrom, and a separate claim for their emotional distress which resulted from being a witness to the accident. This probably alerted the courts in both cases to the separate nature of the claims for relief. In this case, the plaintiffs made only one claim for relief, including all physical and emotional or mental damages. The plaintiffs could have made these issues considerably less complex by similarly pleading two separate grounds for emotional distress damages. This, we conclude, contributed to the district court's failure to separate the emotional damages resulting from Kapoulas' status as a witness and his emotional distress resulting from the actual impact.

2. A third Illinois decision lends additional support to our separation of a direct victim's emotional distress resulting from his impact or injury and his emotional distress resulting from witnessing injuries to another victim. In *Hayes v. Illinois Power Co.*, 225 Ill.App.3d 819, 167 Ill. Dec. 290, 587 N.E.2d 559 (1992), also decided after *Rickey*, the plaintiff sought relief for injuries as both a bystander and a direct victim. While plowing a field, the plaintiff's grandfather severed a guy wire with his tractor. As the grandfather attempted to untangle the wire, the wire slackened and touched an uninsulated, 7,200–volt transmission wire. The grandfather was instantly electrocuted and was unable to free himself from the wire. When the plaintiff attempted to free his grandfather from the wire, he was electrocuted as well. While waiting for the electric company to shut off the electricity, the plaintiff watched as his grandfather died. Similar to the decisions in *Carlinville* and *Alexander*, the *Hayes* court also recognized the distinction between damages which resulted from the plaintiff's electrocution and damages which resulted from his status as a bystander. Notwithstanding this distinction, the court reversed the lower court's dismissal of the plaintiff's cause of action, holding that the plaintiff had a cause of action for both his damages resulting from his electrocution, *and* his damages which resulted from his own fear while he was in the zone of danger near his grandfather. *Id.* 167 Ill.Dec. at 294, 587 N.E.2d at 563. Note, however, that his damages as a witness were only recoverable if he later satisfied the *Rickey* analysis.

■ The defendants argue that because Kapoulas' emotional distress did not result from a fear for his own safety, he cannot recover for any emotional distress damages. We disagree. Although the evidence, read in a light most favorable to Kapoulas, does not support a finding that his emotional distress resulted from a fear for his own safety, this does not end our analysis under the impact rule. In this case, we conclude that Kapoulas was both a direct victim and a bystander for the purposes of determining the source of his emotional distress.

The depositions of the examining psychiatrists indicate that Kapoulas suffered emotional distress from the fact that he was a participant in the accident. Specifically, he was upset because he was the driver of the truck that killed the two children. Dr. Powell, an examining psychiatrist, testified in his deposition that Kapoulas was angry about being unjustly labelled a killer; he felt guilty and depressed about being involved in the deaths of the two children; he feared getting involved in another accident in which he might be placed in a similar situation; he was angry about being lumped in a group of irresponsible and reckless truckers; and he felt he did not do anything to merit his involvement in the accident.[3] These facets of his emotional distress did not result from his capacity as a bystander but from his participation in the accident and as a direct victim.

■ Given that Kapoulas suffered some emotional distress as a direct victim, with respect to this emotional distress Kapoulas need only satisfy the demands of the impact rule. Unfortunately, Illinois' impact rule is not terribly clear. Some Illinois decisions, and at least one federal district court decision, have held that the emotional distress must be directly causally related to the physical injury to recover under the impact rule.

See *In Re Air Crash Disaster Near Chicago*, 507 F.Supp. 21, 23 (N.D.Ill.1980) ("under Illinois law, an individual can recover for emotional distress or suffering only when the distress is caused by a physical injury"); *Harkcom v. East Texas Motor Freight Lines, Inc.*, 104 Ill.App.3d 780, 60 Ill.Dec. 494, 496–97, 433 N.E.2d 291, 293–94 (1982); *Cutright v. City Nat'l Bank*, 88 Ill.App.3d 742, 44 Ill.Dec. 50, 51, 410 N.E.2d 1142, 1143 (1980) (citing *Carlinville Nat'l Bank v. Rhoads*, 63 Ill.App.3d 502, 20 Ill.Dec. 386, 389, 380 N.E.2d 63, 66 (1978)). Conversely, other Illinois decisions suggest that physical injury is *not* necessary to establish a claim for emotional distress—a plaintiff need only allege physical impact. See, e.g., *Allen v. Otis Elevator Co.*, 206 Ill.App.3d 173, 150 Ill.Dec. 699, 675, 563 N.E. 826, 832 (1990) (holding that there need be no causal connection between impact or injury and emotional distress); *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991) (holding, in a psychotherapy malpractice case, that plaintiff could recover for emotional distress resulting from sexual relations which resulted in no *physical* injury). Looking past this apparent conflict between the Illinois Appellate Court decisions, we nevertheless are bound by the language of the Illinois Supreme Court. In restating the impact rule established in *Braun v. Craven*, 175 Ill. 401, 51 N.E. 657 (1898), the Illinois Supreme Court reiterated that a plaintiff must demonstrate "a contemporaneous physical injury or impact" to recover for emotional distress. *Rickey*, 75 Ill.Dec. at 214, 457 N.E.2d at 4. Although "contemporaneous" could have several meanings, we interpret "contemporaneous" in this context to mean that Kapoulas' emotional distress must have been proximately related either to his injury or the impact of the accident.[4] More signifi-

---

3. Notwithstanding our conclusion that Kapoulas suffered some of his emotional distress as a result of his direct participation in the accident, the depositions are remarkably unhelpful with respect to this issue. We surmise that the lawyers conducting the depositions were not contemplating the precise issue before this Court. Had they considered the importance of determining the source of emotional distress, either as a witness or a direct participant, our job would have been

much easier. In any event, summary judgment was obviously inappropriate.

4. We do not interpret "contemporaneous" to mean simply that the emotional distress occurred simultaneously with the accident, notwithstanding the relevance of this fact. Adopting this meaning of contemporaneous would allow recovery for emotional distress wholly unrelated to the accident so long as it occurred simultaneously with the accident. We believe the Illinois Su-

cantly, the Court refers to both injury *and* impact. This language suggests that the Illinois Supreme Court meant to include emotional distress resulting not only from an injury, but also emotional distress resulting merely from the impact. Obviously, if the Illinois Supreme Court intended to include emotional distress arising only from an injury, it would never have included the word "impact." [5]

After carefully considering these different interpretations of the impact rule and the language of the Illinois Supreme Court, we conclude that Illinois law does not require a causal nexus between emotional distress and a physical injury, although we admit that Illinois law is less than compelling on this point. Given this standard, we believe there is sufficient evidence in the record to create a material issue of fact as to the source of Kapoulas' emotional distress, making summary judgment inappropriate. We therefore reverse and remand for further proceedings consistent with this opinion on the issue of Loren Kapoulas' emotional distress and Alyssa Kapoulas' corresponding claim for loss of consortium.

The plaintiffs also argue that the district court erred in denying their motion to voluntarily dismiss without prejudice. Under Federal Rule of Civil Procedure 41(a)(2), a district court in its sound discretion may allow a plaintiff to dismiss his claim voluntarily without prejudice. *Tyco Labs., Inc. v. Koppers Co.*, 627 F.2d 54, 56 (7th Cir.1980). The district court here did not abuse its discretion. At the time plaintiffs made their motion, discovery had already been well underway. Furthermore, upon questioning by the district court, the plaintiffs responded

that they intended to refile the case in state court, clearly evidencing an intent to avoid further adverse rulings by the district court. This, the district court concluded, was insufficient to warrant dismissal without prejudice. *See Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969).

REVERSED AND REMANDED.

---

preme Court did not intend to allow recovery for emotional distress which is not in some respect proximately related to the impact or injury.

5. In fact, in its *Rickey* opinion, the Illinois Supreme Court refers to the "purely formal" or even trivial physical contacts which could give rise to emotional distress damages, suggesting that there need not be a causal relationship between the emotional distress and a physical injury. *See Rickey*, 75 Ill.Dec. at 214, 457 N.E.2d at 4. It is also possible to read "injury" broadly to include all foreseeable consequences of a defendant's negligent conduct, even if the "injury" is not a physical injury.

Moreover, the broad language in *Rickey* discussing the impact rule is in contrast to other jurisdictions which construe the impact rule more strictly. *See, e.g., Bolin v. Cessna Aircraft Co.*, 759 F.Supp. 692, 716–17 (D.Kan.1991) (requiring physical injury to the person); *Fogarty v. Campbell 66 Express, Inc.*, 640 F.Supp. 953, 960–61 (D.Kan.1986) (discussing the difference between a broad and narrow construction of the impact rule). This suggests that if the Illinois Supreme Court intended to limit damages only to emotional distress which resulted from an injury, they could have done so with a stricter interpretation of the impact rule.