DACE INTERNATIONAL, INC., d/b/a Computer Care Centers, Plaintiff-Appellant, v. APPLE COMPUTER, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—94—1312

Opinion filed August 30, 1995.

Anthony S. DiVincenzo, of Campbell & DiVincenzo, of Chicago, for appellant.

James K. Gardner and William W. Davis, both of Neal, Gerber & Eisenberg, of Chicago, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Dace International, Inc. (Dace), brought a breach of contract action against defendant Apple Computer, Inc. (Apple), in the circuit court of Cook County. Apple filed a motion to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)) based on a forum selection clause in the parties' contract which designated California as the forum for all litigation between the parties. The trial court granted this motion to dismiss.

On appeal, Dace alleges that: (1) the forum selection clause is, as a matter of law, void as against public policy; and (2) the clause is unenforceable under the facts of this case. We reject Dace's arguments, finding the clause at issue enforceable, and affirm the trial court.

In April 1991, Dace contracted with Apple to act as a computer sales consultant. The "Authorized Apple Education Sales Consultant 1991 Agreement" (the Agreement) allowed Dace to solicit and service professional education customers in Illinois.

In July 1991, Apple notified Dace that it was terminating the Agreement because of Dace's substandard performance. Dace alleges that its termination breached the parties' Agreement and that Dace had fully performed all of its duties under the Agreement.

Dace filed this breach of contract action in Illinois. Apple moved to dismiss claiming that the Agreement's forum selection clause established Santa Clara County, California, as the site of any and all litigation between the parties.

The forum selection clause provides in part:

"(1) This Agreement shall be governed by and construed in accordance with the laws of the State of California except that body of law known as Conflicts of Law.

(2) All actions or proceedings arising directly or indirectly from this Agreement other than those for injunctive relief shall be litigated in courts located within the County of Santa Clara, California. Consultant consents to the jurisdiction thereof and agrees not to disturb such choice of forum. If Consultant is not a resident

of California, Consultant waives the personal service of any and all process upon it, and consents that all such service or process may be made by certified or registered mail, return receipt requested, addressed to Consultant as set forth in this Agreement."

The trial court enforced this clause and entered an order granting Apple's section 2—619 motion to dismiss Dace's action. In reviewing orders on motions to dismiss, we apply a *de novo* standard of review. *Federal Insurance Co. v. St. Paul Fire & Marine Insurance Co.* (1995), 271 Ill. App. 3d 1117, 649 N.E.2d 460; *Toombs v. City of Champaign* (1993), 245 Ill. App. 3d 580, 615 N.E.2d 50.

Dace first alleges the trial court erred in failing to recognize and apply Illinois' public policy disfavoring forum selection. In support of this allegation, Dace cites the recent Illinois Supreme Court decision in *Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 563 N.E.2d 465.

*Williams* was a class action suit brought by student borrowers against the Illinois State Scholarship Commission (ISSC) to enjoin defendant agency from filing collection actions in an allegedly improper venue. In 1982, ISSC began to require student borrowers to execute loan agreements which contained venue waiver clauses requiring borrowers to consent to exclusive jurisdiction in Cook County, Illinois.

Also in effect at the time was an amendment to the Illinois School Code which provided that ISSC "shall file any and all lawsuits on delinquent and defaulted student loans in the County of Cook where venue shall be deemed to be proper." (Pub. Act 85—827, eff. January 1, 1988 (amending Ill. Rev. Stat. 1985, ch. 122, par. 30—15.12 (now 110 ILCS 947/105 (West 1992))).) The supreme court found that the statute and the policy implemented by ISSC violated defendants' due process rights. In reaching this determination, the court applied the balancing test enunciated in *Mathews v. Eldridge* (1976), 424 U.S. 319, 334-35, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902-03, which involves a weighing of the costs and benefits of the challenged State action. Although primarily concerned with the due process implications of State action, the court also found that the forum selection clause "*in the case at bar* results in the contravention of the policy underlying the general venue statute, ridiculous long-distance forum abuse, and the unfair burdening of a forum not connected to the litigation." (Emphasis added.) *Williams*, 139 Ill. 2d at 71-72.

The court did not, as Dace contends, recognize an independent public policy voiding forum selection clauses. Instead, the court's decision indicates that the policy implications of Illinois' general venue

statute were the compelling factors. Moreover, the court did not find the concept or practice of forum selection objectionable. Contrary to Dace's assertion that *Williams* states a general disapproval of forum selection clauses, the court's analysis suggests that the validity of forum selection clauses is to be determined on a case-by-case basis. Proceeding on such a basis, the *Williams* court recognized the seeming conflict between *Martin-Trigona v. Roderick* (1975), 29 Ill. App. 3d 553, 331 N.E.2d 100, and *Calanca v. D&S Manufacturing Co.* (1987), 157 Ill. App. 3d 85, 510 N.E.2d 21.

*Martin-Trigona* involved a residential lease agreement containing a venue waiver provision. The agreement provided that: "Lessee further consents and waives venue or other objections to lessor instituting any action under this lease in any circuit court of Illinois." (*Martin-Trigona,* 29 Ill. App. 3d at 554.) Without enunciating a test or standard for determining the validity of forum selection or venue waiver clauses generally, the court held the provision "void as against public policy." *Martin-Trigona,* 29 Ill. App. 3d at 555.

*Calanca* involved an employment contract between an Illinois resident and a Wisconsin corporation, wherein the parties agreed that "in the event of any litigation ***, [the] proper forum for the resolution of such claim shall be the Circuit Court for Jackson County, Wisconsin." (*Calanca,* 157 Ill. App. 3d at 86.) The *Calanca* court held that a forum selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances. (*Calanca,* 157 Ill. App. 3d at 87.) The opposing party must show "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Calanca,* 157 Ill. App. 3d at 87-88.

The *Calanca* court considered the following factors relevant to the determination of whether a forum selection clause is reasonable:

     "(1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance of the contract; *** (4) the location of the parties and witnesses participating in the litigation ***[;] (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for." *Calanca,* 157 Ill. App. 3d at 89.

The *Williams* court applied the reasoning of both decisions, first citing *Martin-Trigona* in support of its finding that the venue waiver provision in the student loan agreement was contrary to the policy

behind our general venue statute, the aim of such policy being "to protect all defendants from being sued in a county arbitrarily selected by a plaintiff." *Williams*, 139 Ill. 2d at 70.

The supreme court then applied the factors considered in *Calanca*, finding the balance of these factors supported the determination that plaintiffs were effectively deprived of their day in court. (*Williams*, 139 Ill. 2d at 72.) The court paid particular attention to the sixth *Calanca* factor, finding that a venue waiver provision that is part of a "boilerplate" agreement has its significance greatly reduced because of the inequality in the parties' bargaining power. (*Williams*, 139 Ill. 2d at 72.) The court further observed that the forum selection clause in *Calanca* was the result of arm's length negotiation between experienced and sophisticated businessmen, suggesting that the *Calanca* court "would have given far less weight to a forum selection clause embedded in an adhesion contract." *Williams*, 139 Ill. 2d at 73.

■ ■ Both *Martin-Trigona* and *Williams* were concerned with protecting Illinois defendants against "being sued in a county arbitrarily selected by a plaintiff, wherein the defendant does not reside, or in which no part of the transaction occurred." (*Martin-Trigona*, 29 Ill. App. 3d at 555.) However, *Calanca* and the instant appeal examine the validity of forum selection clauses, while *Martin-Trigona* involved a venue waiver clause. Venue waiver represents one party's consenting to be sued in a forum or forums of the other party's subsequent choosing. Accordingly, we reject Dace's contention that all forum selection clauses are void as against public policy and direct our attention to Dace's second argument that, under the specific facts of this case, the forum selection clause should not have been enforced.

Dace argues that the *Calanca* factors point to Illinois as the more convenient and appropriate forum for the breach of contract action. Dace is correct in noting that four of the six factors favor Illinois. However, forum selection clauses are *prima facie* valid, and the party opposing enforcement is required to show that litigation in the contractual forum will be so burdensome that there will be no real opportunity to litigate the issues in a fair manner and that enforcement of the clause is tantamount to depriving the plaintiff access to the courts. (See *Calanca*, 157 Ill. App. 3d at 87-88.) Thus, while Dace is clearly able to show that it would be inconvenienced by a California forum, relative inconvenience has been routinely rejected as a basis for voiding forum selection clauses: "[T]he question *** is not the most convenient place for trying these suits; it is whether the defendants consented to being sued in [a particular forum] and by do-

ing so waived their right to object to the jurisdiction of the courts ***
over them." *Northwestern National Insurance Co. v. Donovan* (7th
Cir. 1990), 916 F. 2d 372, 375.

Dace has not demonstrated how or why it will be "denied its day
in court" should the litigation advance in California. Dace bears the
burden of proving the clause unreasonable, and it has not done so.

■ Moreover, some of the *Calanca* factors favor a California
venue: the agreement was formulated and is governed under Califor-
nia law, and there was not a pronounced inequality of bargaining
power. The supreme court's analysis in *Williams* emphasized the par-
ties' relationship, observing that an agreement between experienced
businessmen was to be afforded significantly more weight than one of
an adhesional nature between parties of substantially disparate
bargaining power and experience. Dace and Apple are both corporate
entities, although of vastly different size, accustomed to negotiation
and practice in the computer industry. Dace cannot credibly claim it
failed to understand the meaning of the forum selection clause, or
that it was "forced" to accept the provision as a precondition of doing
business with Apple, although merely requiring Dace to accept the
clause as a condition or cost of doing business is not necessarily ob-
jectionable. See *Mastrobuouno v. Shearson Lehman Hutton, Inc.* (7th
Cir. 1994), 20 F.3d 713, 719.

The clause, though part of a standard form agreement drafted by
Apple, was presented to Dace prior to any agreement between the
parties and was, or certainly could have been, the subject of negotia-
tion. We decline to remedy Dace's failure or inability to object to the
clause at the time of contracting and see no reason to release a so-
phisticated corporate entity from the consequences of its bargain.

■ Dace is suing on the Agreement, seeking to demonstrate its
performance under it, while simultaneously alleging that certain
terms of the Agreement are unenforceable. Absent contravention of
Illinois' general venue statute, inconvenience of a California forum is
simply not a sufficient basis upon which to invalidate the parties'
Agreement. (See *Maher & Associates, Inc. v. Quality Cabinets* (1994),
267 Ill. App. 3d 69, 640 N.E.2d 1000.) This holding is reinforced by an
impressive body of recent Federal law finding forum selection clauses
presumptively valid and enforceable. Illustrative of this trend is the
Supreme Court decision in *Carnival Cruise Lines, Inc. v. Shute* (1991),
499 U.S. 585, 113 L. Ed. 2d 622, 111 S. Ct. 1522.

In *Carnival*, plaintiffs sued in Washington for injuries sustained
while passengers aboard a Florida-based cruise ship. Involved was an
agreement which required that all disputes be litigated in Florida.
The Supreme Court enforced the forum selection clause, holding such

clauses presumptively valid and commercially reasonable despite the fact that in *Carnival* the "agreement" was printed on the back of the passengers' tickets and was not, therefore, the subject of negotiation, and in recognition of the apparent disparity in bargaining power between the cruise line and plaintiffs. In enforcing the forum selection clause contained in a nonnegotiated, boilerplate agreement between unequal participants, the Supreme Court noted that a corporate defendant "has a special interest in limiting the fora in which it potentially could be subject to suit" because it deals with individuals from many locales. (*Carnival Cruise Lines*, 499 U.S. at 593, 113 L. Ed. 2d at 632, 111 S. Ct. at 1527.) The Supreme Court found that the *Carnival* plaintiffs had failed to meet their "heavy burden of proof" required to void a forum selection clause on grounds of gross inconvenience. *Carnival Cruise Lines*, 499 U.S. at 594-95, 113 L. Ed. 2d at 632-33, 111 S. Ct. at 1528.

Apple is subject to the same interstate concerns the Court recognized in *Carnival*, and the Agreement between Apple and Dace certainly suggests commercial reasonableness more than an "agreement" printed on the back of a vacationer's ticket. The reasoning behind *Carnival*, though not controlling, is instructive, and if applied to this appeal would undoubtedly favor enforcement of the forum selection clause. By this observation, we do not necessarily accept the wide swipe of *Carnival* for Illinois. Frankly, *Carnival* does not leave much for a plaintiff to argue since it is clearly a cause of action brought by a consumer without any real opportunity to consider the acceptance of a forum selection clause. Could product liability or warranty claims for motor vehicles be limited only to Detroit? Could Apple use this forum selection clause in its contracts with retail customers? While we do not decide these questions here, we do not wish future courts to construe our holding here as agreement with *Carnival* as to contracts used by unsophisticated consumers in small transactions in the marketplace.

The latest Supreme Court treatment of forum selection clauses reaffirms the reasoning and holding of *Carnival* and upholds the validity of a foreign forum selection clause. (*Vimar Seguros Y Reaseguros, S. A. v. M/V Sky Reefer* (1995), 515 U.S. 528, 132 L. Ed. 2d 462, 115 S. Ct. 2322 (dealing with a controversy between an importer and a maritime carrier).) We would hope that Honda, B.M.W. or Saab warranty claims might not be limited only to forums in Osaka, Munich or Stockholm.

■ In a factually similar case, the District Court for the Northern District of Illinois found in *Norman Security Systems, Inc. v. Monitor Dynamics, Inc.* (N.D. Ill. 1990), 740 F. Supp. 1364, 1368, that enforce-

ment of forum selection clauses is now the rule rather than the exception. Under *Norman*, such clauses will not be invalidated absent a showing that they were procured through fraud or duress, violated a strong public policy, or were grossly inconvenient. (*Norman Security Systems, Inc.*, 740 F. Supp. at 1368.) The district court rejected each of plaintiff's three bases of inconvenience: "the necessity of customer witnesses, the necessity for the trier of fact to view the computer system, and the costs involved in transporting the computer equipment and witnesses to California." (*Norman Security Systems, Inc.*, 740 F. Supp. at 1369.) The district court determined that any inconvenience resulting from the potential loss of live witnesses was curable by use of depositions and videotaped testimony. *Norman Security Systems, Inc.*, 740 F. Supp. at 1368.

Dace does not allege fraud, and none is evident in the record before this court. The inconvenience alleged by Dace of a California forum is quite similar to that before the district court in *Norman*, and that court's decision is persuasive.

Dace has failed to overcome the presumptive validity of the Agreement's forum selection clause, and we therefore affirm the dismissal order of the circuit court.

Affirmed.

RIZZI and TULLY, JJ., concur.