THEODORE ZEKMAN, Plaintiff-Appellant, v. DIRECT AMERICAN
MARKETERS, INC., et al., Defendants-Appellees.

First District (3rd Division)   No. 1—95—3547

Opinion filed January 15, 1997.

GORDON, J., dissenting.

Michael J. Freed, Michael B. Hyman, and William H. London, all of Much, Shelist, Freed, Denenbert & Ament, P.C., Steven M. Levin and David B. Wilson, both of Levin & Perconti, and Robert S. Levin, Joseph A. Ginsburg, and Donald B. Levine, all of Levin & Ginsburg, Ltd., all of Chicago, for appellant.

Lee A. Freeman, James T. Malysiak, and Kevin P. Kappock, all of Freeman, Freeman & Salzman, P.C., and David F. Graham, Richard D. Raskin, Susan A. Weber, and Eric S. Mattson, all of Sidley & Austin, both of Chicago, and Peter D. Raymond and Lauren P. Eisen, both of Hall, Dickler, Kent, Friedman & Wood, of New York, New York, for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Dr. Theodore Zekman, both individually and also as a class representative, asserted a claim for damages against defendant Direct American Marketers, Inc. (Direct American), based upon three alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)), and one violation of the Illinois Pay-Per-Call Services Consumer Protection Act (815 ILCS 520/1 *et seq.* (West 1992)), in connection with a mail sweepstakes promotion. Plaintiff also asserted

claims against American Telephone and Telegraph Company of Illinois (now AT&T Corp.), American Telephone and Telegraph Company of Illinois, AT&T Communications, Inc., and AT&T Communications of Illinois, Inc. (collectively, AT&T) for common law fraud, knowingly accepting the benefits of a fraud, and violating the Consumer Fraud Act.

Plaintiff appeals from the trial court's decision granting defendants' motion for summary judgment and from an earlier order in which the trial court dismissed plaintiff's counts against AT&T, holding that the Consumer Fraud Act does not permit claims for knowingly accepting the benefits of fraud. On appeal, plaintiff contends that (1) the trial court erred in granting summary judgment when genuine issues of material fact existed as to the causal relationship between the defendants' deceptive acts and the harm suffered by plaintiff, and (2) the trial court erroneously held that the Consumer Fraud Act does not apply to a wrongdoer who knowingly accepts the benefits of the fraud.

BACKGROUND

This suit arises out of a series of separate mailings that plaintiff received from Direct American during the fall of 1991 and early 1992. The mailings were addressed specifically to plaintiff. Each mailing displayed a "900" number one could call to claim an award. Plaintiff claimed that the mailings were deceptive and led him to incur charges for "900" number calls he made pursuant to the instructions on the mailings. A "900" number is a 10-digit toll telephone number that a caller is billed for calling. AT&T billed and collected from Zekman for the "900" calls and, therefore, derived benefit from the calls. AT&T managers received and reviewed drafts of planned mailings for accuracy and fairness, and monitored Direct American's programs to determine whether Direct American's usage of the "900" numbers complied with regulatory rules, AT&T guidelines, and state laws. Zekman never won a cash award as a result of calling the "900" numbers. He did, however, receive discount coupons, which he threw away.

Early in the case, plaintiff alleged, in counts V and VI of the amended complaint, that AT&T knowingly accepted the benefits of Direct American's alleged fraud by recovering fees for the "900" number phone calls and therefore violated section 2, section 2P or, in addition thereto, section 9 of the Consumer Fraud Act. The trial court found that plaintiff's argument ignored the fact that AT&T's service fee is separate from the benefit derived from Direct American's conduct. The court stated in pertinent part:

"There is nothing in the plain language of the Consumer Fraud Act nor in its legislative history nor in the myriad of case law to support such a vicarious liability theory.

\* \* \*

AT&T has allowed their service to be used; but AT&T has not, as required by Section 2, used or employed any deception, fraud, false pretense, or concealment, nor could intention to rely ever be imputed from such involvement by the message carrier."

The court later amended its order and allowed plaintiff to file second, third, and fourth amended complaints in which plaintiff alleged additional information regarding AT&T's role in the mailing program. Plaintiff alleged, *inter alia*, information regarding AT&T's separate "900" number promotion unit, Multiquest, AT&T's agreement with Direct American, and AT&T's internal policies regarding customers who complained about the "900" numbers.

Zekman was eventually deposed. His deposition testimony provides in pertinent part:

"Q. Well, was there a time when you were getting cards but you were not responding, you were simply throwing them away?

A. No. I responded to—my name was on them. And I thought that my name being on them meant something.

\* \* \*

Q. Is it your testimony that each and every time you placed a call to a 900 number, you believe that you won a cash award?

A. Every time I placed a call, I was doing so in response to instructions.

Q. Were you being compelled to respond?

A. I wasn't compelled.

Q. It was your own decision?

A. Yes.

Q. And you were being given information in the mailing pieces, correct?

A. I was responding to the fact that I have been given a mailing that had my name on it with a certain amount of money that I had won as an award.

Q. You said money—

A. Or a claim.

\* \* \*

Q. Dr. Zekman, does that [referring to an exhibit of a mailing] disclose to you that there are six different types of awards? Do you see in the box where it says awards are?

A. Yes. But I did not carefully read what all the awards were. I was only interested in whether I won an award.

Q. Right. And is it your testimony that you believed after you read this that you had won a cash award?

A. I did not know whether I had won an award, a cash award. I was responding to instructions in the hope that I did win a cash award."

The defendants moved for summary judgment on the ground that Zekman admitted in his deposition testimony that he had not been deceived by anything that he had read in the received mailings. The trial court entered summary judgment in favor of Direct American and AT&T and against plaintiff on all counts in his fourth amended complaint. The trial court held that plaintiff could not establish a material issue of fact with respect to proximate causation because his admissions precluded him from establishing that the practices of which he complained were the proximate cause of any injury to him. The court stated in pertinent part:

"Accordingly, to establish proximate cause, Zekman must show that, by preparing the Solicitations to create false and misleading impressions, defendants caused him to incur charges for calls made in response to those impressions. The Court finds that Zekman's own deposition testimony demonstrates that his alleged injury did not result from the alleged false and misleading impressions created by the Solicitations.

Contrary to the allegations in the Complaint that the Solicitations led him to believe that he won a major cash prize or other valuable award, Zekman testified that he knew that he had not necessarily won any particular award.

\* \* \*

The Court also rejects Zekman's argument that his deposition testimony raises a genuine issue of material fact concerning whether he had won a cash prize prior to placing the '900' number calls. Contrary to Zekman's assertion, the Court finds that viewing his deposition testimony as a whole, [citations] it is conclusive and without contradiction that he did not know whether or not he had won a cash award."

We disagree and reverse.

## ANALYSIS

### I

Plaintiff first contends that the trial court erred in granting summary judgment when it found that Zekman's alleged injury did not result from the alleged false and misleading impressions caused by the solicitation because his deposition testimony demonstrated that he knew that he had not necessarily won an award.

■ A trial court should grant summary judgment only when the pleadings, depositions, admissions and affidavits establish there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Quality Lighting, Inc. v. Benjamin*, 227 Ill. App. 3d 880, 883, 579 N.E.2d 377 (1992). The purpose of summary judgment procedure is not to try an issue of fact but, rather, to determine whether a triable issue of fact exists. *Quality Lighting*, 227 Ill. App. 3d at 883. Although the use of summary judgment is encouraged as an aid to the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986). An appellate court reviews summary judgment *de novo*. *Demos v. National Bank*, 209 Ill. App. 3d 655, 659-60, 567 N.E.2d 1083 (1991). The court must construe the evidence strictly against the movant and liberally in favor of the opponent. *Quality Lighting*, 227 Ill. App. 3d at 884. Thus, to resolve the issue in this case, we must determine whether the trial court correctly found that no genuine issues of material fact existed and whether summary judgment was correctly entered for defendants as a matter of law.

■ The purpose of the Consumer Fraud Act is to protect consumers against fraud and unfair or deceptive acts and practices in the conduct of trade or commerce. *Johnston v. Anchor Organization for Health Maintenance*, 250 Ill. App. 3d 393, 396, 621 N.E.2d 137 (1993). Section 2 of the Act provides:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1992).

Section 10a(a) of the Act provides for a private cause of action in cases only where the plaintiff can show that damages were proximately caused by the alleged fraud. 815 ILCS 505/10a(a) (West 1992); *Stehl v. Brown's Sporting Goods, Inc.*, 236 Ill. App. 3d 976, 981, 603 N.E.2d 48 (1992); *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 128, 648 N.E.2d 226 (1995). Section 10a(a) provides:

> "(a) Any person who suffers damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual

damages or any other relief which the court deems proper." 815 ILCS 505/10a(a) (West 1992).

Defendants cite the following excerpt from plaintiff's deposition testimony as evidence that plaintiff knew he had not won an award:

"Q. And is it your testimony that you believed after you read this that you had won a cash award?

A. I did not know whether I had won an award, a cash award. I was responding to instructions in the hope that I did win a cash award."

Conversely, plaintiff asserts that he did establish the requisite causal link between the mailings and his damages because he reacted reasonably to the mailings in that he acted in the manner in which defendants intended a recipient of the mailing to act. He asserts that even if he had been suspicious of certain deceptions in the solicitations, such awareness had no bearing on the causal link between his damages and violations of the Act.

■ Plaintiff's argument can be construed as asserting that parties are not required under the Act to show that they are actually deceived. We disagree. It is well settled that reliance is no longer a requirement under the Act. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 76, 643 N.E.2d 734 (1994). In reality, however, the theory of reliance is ambiguously present within the parameters of the concept of proximate cause, so that to maintain a private action under the Act, a party must have relied on the wrong to some extent in order to establish proximate cause. Thus, we do not agree with the argument that a party can make a claim where a party was not deceived. However, we do agree with the alternative argument that a party who was deceived by an unlawful act and suffers damages as a result can make a claim. In this case, there are many factual issues relative to the issues of deception and causation that have not yet been resolved.

■ Defendant's argument that plaintiff knew that he had not won an award essentially relates to whether plaintiff was deceived. After reviewing plaintiff's deposition testimony, and the series of mailings included in the record, it is our view that Zekman's testimony is not conclusive as to whether he knew that he had not necessarily won an award. Our review of the record shows that plaintiff did not always receive the exact same mailing over the various months during 1991 and early 1992. Some of the mailings state: "Go ahead and claim your award now!" Other mailings suggest that the recipient must have a winning claim number: "If your own and very exclusive award claim number is *** the number that has been pre-selected by computer ***." One mailing in particular notes:

"You're confirmed to receive at least one of the following awards: $6,000.00 cash or cashier's check *** [or] $200.00 Discount Certificates. Remember you are CONFIRMED and absolutely will receive an award. The only requirement to receive your award is you must communicate with the Claim Center."

Plaintiff did not say in his deposition that he knew he had not necessarily won an award. On the other hand, he did not say that he believed he had won an award. Review of plaintiff's testimony should be juxtaposed to the mailings. When plaintiff stated that he hoped he had won a cash award, it is unclear whether he hoped he had won a cash award as opposed to a different type of award, such as the certificates. Furthermore, the deposition testimony is not clear as to which mailings plaintiff was shown when he was questioned about his beliefs as to what he thought when he received such mailings. It is unclear whether plaintiff responded in the same way to all of the different mailings, which give different instructions or possibilities. In sum, plaintiff's testimony is simply unclear. While we are mindful that deponents are held to their deposition testimony, we are also mindful that depositions, particularly those taken by opposing counsel, tend to limit a deponent's opportunity to explain and elaborate.

We also note that Zekman's deposition testimony does not cover all the issues disputed in this case. For instance, there was no interrogation on the mailing's disclosure of the odds of winning an award. We do not know whether a more conspicuous disclosure of the odds would have made any difference in Zekman's response to the mailings. We recognize that there are some unusual aspects about Zekman's actions in this situation. However, we believe that an analysis of those actions can only be resolved by the fact finder.

Accordingly, we hold that there is a genuine issue of fact as to whether defendant's mailing caused plaintiff to believe that he had won an award. Therefore, summary judgment was improper.

## II

■ Plaintiff next appeals from an order in which the trial court granted AT&T's motion to dismiss counts V and VI of the amended complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—615 (West 1992).

A motion to dismiss under section 2—615 challenges the legal sufficiency of the complaint. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475, 575 N.E.2d 548 (1991). The relevant inquiry is whether sufficient facts are contained in the pleadings which, if proved, would entitle a plaintiff to relief. *Urbaitis*, 143 Ill. 2d at 475. Upon review of an order granting a section 2—615 motion, all well-

pleaded facts are taken as true. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 652 N.E.2d 267 (1995). In reviewing orders on a motion to dismiss, we apply a *de novo* standard of review. *Dace International, Inc. v. Apple Computer, Inc.*, 275 Ill. App. 3d 234, 655 N.E.2d 974 (1995).

Plaintiff requests that this court reinstate the cause of action against AT&T for knowingly accepting the benefits of a fraud if this court determines that the Consumer Fraud Act applies to a wrongdoer who knowingly accepts the benefits of a fraud.

Plaintiff cites *Armstrong v. Edelson*, 718 F. Supp. 1372 (N.D. Ill. 1989), for the proposition that the Consumer Fraud Act applies to a wrongdoer who knowingly accepts the benefits of fraud. In *Armstrong*, plaintiffs were victimized by a home repair fraud perpetrated by two contractors. 718 F. Supp. at 1373. The contractors conned the consumers into signing "cash sales contracts" with customers. *Armstrong*, 718 F. Supp. at 1373. These contracts were misrepresented as estimates for repair work but actually provided for substantial penalties if the consumer cancelled the contract more than three days after signing it. *Armstrong*, 718 F. Supp. at 1373. After the three-day period, the contractors presented the customer with previously undisclosed financing terms and then coerced the customers into agreeing to the terms by threatening them with loss of their homes or lawsuits to recover the cancellation penalties. *Armstrong*, 718 F. Supp. at 1373.

The plaintiff's only allegation implicating a third-party, Dartmouth, in this situation concerned $16,000 in credit that Dartmouth extended to the plaintiffs to finance the home improvements. *Armstrong*, 718 F. Supp. at 1373. The plaintiffs had signed a retail installment contract with one of the contractors that had been prepared on a preprinted Dartmouth form. *Armstrong*, 718 F. Supp. at 1373. When the plaintiffs signed the installment contract they simultaneously mortgaged their home to provide security for the loan. *Armstrong*, 718 F. Supp. at 1374. The plaintiffs did not allege that Dartmouth was directly responsible for the contractor's alleged fraud. *Armstrong*, 718 F. Supp. at 1374. Instead, they alleged that Dartmouth was liable because it knew that the contracts initiated by the contractor were tainted by fraud. *Armstrong*, 718 F. Supp. at 1374. Plaintiffs specifically alleged that Dartmouth aided and abetted the contractors' violations under the Act. *Armstrong*, 718 F. Supp. at 1374.

Dartmouth moved to dismiss, arguing that plaintiffs' complaint failed to state a claim against Dartmouth because under section 10a(a) of the Act, a consumer has a cause of action only against those persons who personally violate the act. *Armstrong*, 718 F. Supp. at

1377. The district court denied Dartmouth's motion. The court stated in pertinent part:

> "This court's research has failed to disclose a case in which a court imposed liability under the Consumer Fraud Act for aiding and abetting a violation of Section 2. However, this court believes that the plaintiffs have nonetheless stated a claim against Dartmouth under the Act. At common law, one who knowingly accepts the benefits of fraudulent conduct is also guilty of the fraud. [Citations.] Plaintiffs' allegations that Dartmouth knowingly participated in the fraud perpetrated by the other defendants, if taken as true as it must be, is sufficient to support a cause of action under the Consumer Fraud Act." *Armstrong,* 718 F. Supp. at 1377.

The court noted that its conclusion was consistent with the purposes of the Act in that section 11a of the Act provides for a liberal construction of the Act to effect its purposes. *Armstrong,* 718 F. Supp. at 1377.

■ We agree with the *Armstrong* court's interpretation of the Act and echo its holding that knowing *participation* or aiding and abetting in fraud is actionable under the Act. Plaintiff requests that this court reinstate those counts that alleged that AT&T knowingly accepted the benefits of Direct American's fraud. But at the same time, plaintiff argues, specifically in his reply brief, that his case against AT&T involves AT&T's "active, concerted participation in the scheme." Thus, it is possible that AT&T's actions, as Dartmouth's actions in *Armstrong,* fall within the purview of the Act. Taking all well-pleaded facts in plaintiff's amended complaint as true, we cannot say as a matter of law that AT&T's actions are not subject to the provisions of the Act. Accordingly, we reverse the trial court's January 26, 1993, ruling dismissing counts V and VI of the amended complaint.

For the foregoing reasons, the judgments of the trial court are reversed and the cause is remanded for further proceedings consistent with this decision.

Reversed and remanded.

LEAVITT, J., concurs.

JUSTICE GORDON, dissenting:

I must regrettably dissent from the decision of this court.

Although the marketing scheme of defendant Direct American Marketers (hereinafter Marketers) may well be violative of the provisions of the Illinois Consumer Fraud and Deceptive Business Prac-

tices Act (hereinafter Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)), plaintiff's admitted conduct precludes him from seeking any recovery under the relevant provisions of that act. This plaintiff testified in his deposition that he only read the notices that he received "in a cursory fashion" and that he only looked to see if they bore his name and if they provided for a cash reward. He explicitly stated that he did not "read it carefully in any other way." Plaintiff admitted that when he placed his "900" calls he did not know whether he had won a cash award. He said, "I was responding to instructions in the hope that I did win a cash reward." He then stated that he called rather than wrote because he was eager to find out. Plaintiff testified that he recalled, among other things, making as many as 11 "900" calls within a single hour and a half, and 13 such calls on October 26, 1991. He further admitted that he persisted in making innumerable calls notwithstanding that each time he received only coupons, which he then gave to his housekeeper. He also testified that he knew that he would be charged for the "900" calls and that he could have used the mail as an alternative. When asked what induced him to respond to these notices, he replied "my name was on them and I thought that my name being on these meant something."

Based upon plaintiff's own testimony, the record is clear that he was induced to place his "900" calls by the mere receipt of a personalized notice announcing that he won a prize, which, by his own admission, could have consisted of coupons rather than cash. Thus, it is clear from the record that he was not induced to act by any violations of the disclosure requirements under the Consumer Fraud Act or the Pay-Per-Call Services Consumer Protection Act (hereinafter Pay-Per-Call Act) (815 ILCS 520/1 *et seq.* (West 1992)). Rather, he was induced to act by a more subtle manipulation, namely, the combined impact of having his printed name embossed in the body of the notice coupled with the use of the term "award." This combination in effect tantalized plaintiff into making expensive phone calls in the "hope that [he] did win a cash award" notwithstanding his knowledge that such an award was not promised and that his repeated telephone experience dispelled that likelihood. (Although plaintiff was 85 years old, no issue was raised of incompetence or mental impairment.) Such inducement through this type of psychological manipulation is not in itself actionable absent misrepresentation or failure to make adequate disclosure as required by statute.

Thus, while defendants' mailings may in fact be replete with violations of statutory disclosure provisions required under the Consumer Fraud Act and the Pay-Per-Call Act, those violations, ac-

cording to Zekman's testimony, could not have been the cause of his damage.

Plaintiff premised his claim for recovery upon the contention that there need not be a cause and effect relationship between defendants' violations and plaintiff's conduct so long as such violations were in fact present. The majority have acknowledged that this argument is vacuous with respect to private rights of action under the Consumer Fraud Act. The existence of violations without further proof of causality suffices only for purposes of injunctive relief. See *Tarin v. Pellonari*, 253 Ill. App. 3d 542, 554, 625 N.E.2d 739, 747-48 (1993) stating:

"We also find that plaintiff could not have recovered under the Consumer Fraud Act. The Consumer Fraud Act provides a private cause of action in cases only where the plaintiff can show that he suffered damage as a result of the unlawful conduct proscribed by the statute. (*Duran v. Leslie Oldsmobile, Inc.* (1992), 229 Ill. App. 3d 1032, 1040.) As the *Duran* court aptly explained:

'[A]lthough a *violation* of the Consumer Fraud Act may occur in the absence of damages, *a private cause of action* does not arise absent a showing of both a violation and resultant damages. [There is] a distinction between a violation absent damages, which the Attorney General may prosecute (Ill. Rev. Stat. 1989, ch. 121$^{1}$/2, par. 263), and a violation causing damages, which either the Attorney General or a private party may pursue (Ill. Rev. Stat. 1989, ch. 121$^{1}$/2, par. 270a).' (Emphasis in original.) (*Duran*, 229 Ill. App. 3d at 1040.)"

Thus, there must be a causal relationship between the violation and the injury, which, in cases of fraud, cannot conceivably exist without some degree of reliance. It is true that, under the Consumer Fraud Act, a plaintiff need not establish the full-blown reliance required in proving common law fraud. See *Smith v. Prime Cable*, 276 Ill. App. 3d 843, 658 N.E.2d 1325 (1995). It would seem, for example, that a court need not scrutinize as closely whether the plaintiff had a right to rely as opposed to a duty to independently investigate. But, there can be no recovery of damages without showing that plaintiff did, in fact, actually rely upon the representations or omissions of the defendant. See *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 594 N.E.2d 1355 (1992). As noted by the majority, this is the obvious import of the requirement under section 10a of the Consumer Fraud Act that plaintiff "suffer[ ] damage[s] as a result of a violation of this Act." 815 ILCS 505/10a(a) (West 1994). The cases have referred to this interrelationship as one of "proximate cause." *E.g., Stehl v. Brown's Sporting Goods, Inc.*, 236 Ill. App. 3d 976, 603 N.E.2d 48 (1992); *Wheeler v. Sunbelt Tool Co.*, 181 Ill. App.

3d 1088, 1108, 537 N.E.2d 1332, 1346 (1989). However, such proximate cause by inherent necessity requires that there be some degree of reliance. Otherwise, there is no conceivable way by which a deception can otherwise work upon its victim to cause damage.

For this court now to find an issue of fact, notwithstanding Zekman's effective disclaimer of any reliance upon the violative portions of the defendant's mailings, gives undue validation to plaintiff's contentions that no reliance whatsoever is required. Alternatively, it would give credence to the underlying contention that any manipulative sales promotion is privately actionable if it induced expenditure by catering to human fantasy or weakness. Unfortunately, it is a matter of common knowledge and experience that such manipulative techniques are common to much of the advertising and promotional endeavors employed in the sale of otherwise legitimate products and not simply reserved for marginal or dubious schemes or promotions such as this one. The requirement that there be a causal relationship between the specific violations and the damage incurred should therefore not be compromised even though the promotion or scheme is otherwise opprobrious and deserving of strict governmental scrutiny and regulation.

Since I believe that summary judgment in favor of defendant Marketers should be affirmed, it should also be affirmed, *a fortiori*, with respect to the remaining defendants whose liability, in effect, is derivative of Marketers.