SANA JAMIL ABBASI, a Minor, By and Through Her Mother and Next Friend, Jamil Abbasi, Plaintiff-Appellant, v. PANAGIOTIS PARASKEVOU-LAKOS *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—97—1965

Opinion filed May 7, 1998.—Rehearing denied June 8, 1998.

WOLFSON, J., specially concurring in part and dissenting in part.

Anthony C. Valiulis and Wendy B. Kahn, both of Much, Shelist, Freed & Denenberg, of Chicago, for appellant.

Ellen S. Martin and Michael Resis, both of Querrey & Harrow, Ltd., of Chicago, for appellees.

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Sana Jamil Abbasi, a minor, by and through her mother and next friend, Jamil Abbasi, filed an eight-count first amended complaint alleging that the minor tenant ingested lead while living in a dwelling unit owned and/or managed by defendants, Panagiotis Paraskevoulakos and Katina Paraskevoulakos. Counts I and V were directed against Panagiotis and Katina Paraskevoulakos, respectively, sounding in negligence and alleging as proof of negligence violations of the Illinois Lead Poisoning Prevention Act (the Act) (410 ILCS 45/1 *et seq.* (West 1996)) and the Chicago Municipal Code, chapters 5—4, 5—12, 7—4 and 13—196 (Chicago Municipal Code, chs. 5—4, 5—12, 7—4, 13—196 (1990)). In the remaining counts, plaintiff asserted private rights of action under the Chicago Municipal Code (counts II, IV, VI and VIII) and under the Act (counts III and VII). This appeal arises out of the dismissal of counts II, III, IV, VI, VII and VIII of plaintiff's first amended complaint.

Plaintiff filed a five-count complaint on April 16, 1996, claiming that the minor plaintiff suffered from lead poisoning ingested while residing in a rental property owned or managed by defendants from May 1990 until January 1996.

Defendants moved to dismiss this complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)). Instead of responding to the motion to dismiss, plaintiff filed a first amended complaint. This complaint contained eight counts; counts I through IV were directed against Panagiotis, and counts V through VIII were directed against Katina. Counts I and V sounded in negligence, claiming that each defendant was the owner and/or managing agent of the apartment where the minor plaintiff had lived between 1990 and 1996 and breached duties to the plaintiff evidenced by violations of the Act and the Chicago Municipal Code, titles 5, 7 and 13.

Counts II and VI stated a private cause of action for nuisance under section 5—4—090 of the Chicago Municipal Code. Chicago Municipal Code § 5—4—090 (1992). Counts III and VII stated a private cause of action under the Act. Counts IV and VIII stated a private cause of action under the Chicago Municipal Code, titles 5, 7 and 13.

Defendants answered counts I and V, the two negligence counts, and moved to dismiss the nuisance, the Act and Chicago Municipal Code counts pursuant to section 2—615. Plaintiff filed a memorandum of law in opposition to the motion to dismiss, and defendants replied.

On January 6, 1997, the trial court dismissed counts II and VI of plaintiff's first amended complaint. Defendants moved to reconsider the denial of their motion to dismiss the remaining counts on February 21, 1997. Plaintiff responded and defendants replied.

On April 16, 1997, the trial court granted defendants' motion to reconsider and dismissed counts II, III, IV, VI, VII and VIII.

The trial court's order specifically found that the Act recognizes a negligence cause of action and that, therefore, it was not necessary to imply a private cause of action in order to remedy a violation of the Act and the Chicago Municipal Code. The trial court further found that the Act and sections of the Chicago Municipal Code, chapters 5—4, 7—4, 5—12 and 13—196, did not give rise to a private cause of action but that their provisions could be the basis for a negligence cause of action as was pled in this case. Plaintiff filed a notice of appeal.

■ A motion to dismiss under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615(b) (West 1994)) challenges the legal sufficiency of the complaint. *Zekman v. Direct American Marketers, Inc.*, 286 Ill. App. 3d 462, 469, 675 N.E.2d 994, 998 (1997). A trial court should grant a motion to dismiss a cause of action only when it is clearly apparent that no set of facts can be proven that will entitle a plaintiff to recover. *Doe v. Surgicare of Joliet, Inc.*, 268 Ill. App. 3d

793, 795, 643 N.E.2d 1200, 1202 (1994). Upon review of an order granting a section 2—615 motion, all well-pleaded facts are taken as true. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 652 N.E.2d 267 (1995). This court reviews *de novo* the trial court's order of dismissal under section 2—615. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 660 N.E.2d 863 (1995); *Zekman*, 286 Ill. App. 3d at 469-70, 675 N.E.2d at 999.

Plaintiff argues that section 5—12—110(e) of the Residential Landlord and Tenant Ordinance (Chicago Municipal Code § 5—12—110(e) (amended November 6, 1991)) expressly gives injured tenants a private right of action for damages against landlords who violate the ordinance. Plaintiff also asserts that she has an implied right to sue under the lead-bearing substances ordinance as well as section 13—196(d) of the Chicago Municipal Code, because the remedies specified in these ordinances do not afford sufficient relief to those injured by violation of the ordinances. Defendants contend that a private right of action is not necessary to achieve the aim of the statute or ordinances.

■ Implication of a private right of action on the basis of a statute or ordinance is appropriate only if: (1) plaintiff is a member of the class for whose benefit the statute was enacted; (2) it is consistent with the underlying purpose of the statute; (3) plaintiff's injury is one the statute was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the statute. *Corgan v. Muehling*, 143 Ill. 2d 296, 312-13, 574 N.E.2d 602, 609 (1991). When a statute is enacted to protect a particular class of individuals, courts may imply a private cause of action for violation of that statute although no express remedy had been provided. *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 432 N.E.2d 849 (1982); *Galinski v. Kessler*, 134 Ill. App. 3d 602, 480 N.E.2d 1176 (1985). Where the legislature had as its purpose in enacting a statute protection of a substantial segment of the public, it is proper to inquire in such circumstances whether the statute is a remedial one and whether certain private remedies are provided for within the statutory framework in order to determine whether a private right of action was intended. *Rhodes v. Mill Race Inn, Inc.*, 126 Ill. App. 3d 1024, 467 N.E.2d 915 (1984). Consideration of these factors supports implication of a private right of action in this case.

Section 5—12—110(e) of the Residential Landlord and Tenant Ordinance states the following:

> "Damages and Injunctive Relief. If there is material noncompliance by the landlord with the rental agreement or with Section 5—12—070, the tenant may obtain injunctive relief, and/or re-

cover damages by claim or defense. This subsection does not preclude the tenant from obtaining other relief to which he may be entitled under this chapter." Chicago Municipal Code § 5—12—110(e) (amended November 6, 1991).

Section 5—12—070 states:

"The landlord shall maintain the premises in compliance with all applicable provisions of the municipal code and shall promptly make any and all repairs necessary to fulfill this obligation." Chicago Municipal Code § 5—12—070 (amended November 6, 1991).

It would appear from a plain reading of section 5—12—110(e) that an injured tenant has an independent right to sue the landlord for damages for a material violation of section 5—12—070. Here, where plaintiff alleges that there were multiple violations of the ordinance that led to the premises not being in a habitable condition, plaintiff as a lawful tenant has a private right of action against the landlord.

■ Defendants' argument that the landlord/tenant ordinance does not apply in this instance because plaintiff failed to allege that the premises comprised more than six units and were not owner-occupied has been waived for failure to raise this argument in the lower court.

■ Analysis of this case in terms of the four factors the court has used to determine whether a private right of action exists leads to the following results. In the case of the Residential Landlord and Tenant Ordinance, the purpose is "to protect and promote the public health, safety and welfare" of tenants by requiring landlords "to maintain and improve the quality of housing." Chicago Municipal Code § 5—12—010 (1992). While criminal penalties exist to compel landlords to maintain their property, these penalties fall short of addressing the injuries to tenants. More importantly, such penalties do not impel landlords to fulfill their obligations under the ordinance. In order to do so, a civil right of action would be needed in order for tenants to enforce their rights.

The lead-bearing substances ordinance not only bars landlords from using lead-bearing substances or maintaining lead hazards in residential property, but also obligates them to maintain property so as to prevent and safely abate such hazards. Chicago Municipal Code §§ 7—4—020, 7—4—030, 7—4—110 (1994). The goal of chapter 13—196 is to ensure that landlords keep leased premises in compliance with Code requirements and "free of flaking, peeling, chipped or loose paint, plaster or structural material." Chicago Municipal Code §§ 13—196—010, 13—196—540(d) (1990). Plaintiff is within the class of persons intended to be protected by the Residential Landlord and

Tenant Ordinance since she is "a person entitled by written or oral agreement, subtenancy approved by the landlord or by sufferance, to occupy a dwelling unit to the exclusion of others." Chicago Municipal Code § 5—12—030(h) (1992). Under the lead-bearing substances ordinance, plaintiff is within the class for which the ordinance provides since she lived on the premises while she was between the ages of one and six. "[P]ersons six years of age and younger" are specifically shielded (Chicago Municipal Code § 7—4—010(2) (1994)). Since plaintiff is a lawful occupant of an apartment located in Chicago, she is within the class intended to be protected by chapter 13—196, designed to ensure the structural integrity and safety of every residential building in Chicago. Chicago Municipal Code §§ 13—196—340 et seq. (1990).

The injuries that plaintiff suffered are the kind that these laws were intended to prevent. The lead-bearing substances ordinance was designed to prevent the very lead-poisoning injuries that the plaintiff suffered. Section 13—196—540(d) was designed to prevent injuries that could be caused by flaking and peeling paint and plaster. The Residential Landlord and Tenant Ordinance was designed to prevent injuries that occur when leased premises are not habitable, such as when a lead hazard exists.

The final factor is whether an adequate remedy for violation of the statute exists. The Residential Landlord and Tenant Ordinance does not carry a criminal penalty for violations that the plaintiff alleges. Criminal sanctions are, however, provided in section 7—4—120 of the lead-bearing substances ordinance. This section provides:

> "Violation of any section of this chapter and any failure to comply with any order authorized pursuant to this chapter shall be punishable by incarceration not to exceed six months and by a fine not less than $50.00 nor more than $500.00 for each offense. Each day that such violation or noncompliance exists shall be considered a separate offense." Chicago Municipal Code § 7—4—120 (1997).

While the penalties under this ordinance could be substantial since each day that the landlord is not in compliance is a new violation, the landlord would still only be subject to a misdemeanor.

Based on the above analysis of the four factors, a private right of action is appropriate under the Residential Landlord and Tenant Ordinance, chapter 13—196 of the Chicago Municipal Code, and the lead-bearing substances ordinance.

■ Plaintiff argues that without a private right of action, the central purpose of the Act cannot be effectively implemented and enforced. That purpose is to curtail the use of lead-bearing products

in order to diminish the incidence of lead intoxication, particularly in children six and under. 410 ILCS 45/1 (West 1996). Defendants contend that the purpose of the statute, as well as the ordinances, is to give the state and municipal boards of health the authority to identify lead paint hazards and to specify the method by which lead paint hazards should be abated. Defendants assert that under the Act, the landlord has no duty to inspect for lead paint; this is the responsibility of the department of health. Thus, according to defendant, the landlord can only be held responsible and punished if he actively placed lead-bearing substances on the premises or for failure to mitigate or abate the lead hazard after receiving notice.

Applying the four factors to determine whether a private right of action on the basis of the Act is appropriate, we find that it is. Plaintiff is a member of the class for whose benefit the statute was enacted, namely, children six and under who are exposed to lead intoxication.

According to the legislative history of the Act, it is only after a child has been lead-poisoned that the state can step in and require a landlord to abate. If the purpose of the Act is to prevent lead poisoning, then plaintiff is correct in asserting that the drafters of the legislation must have intended that a private right of action be available not only to redress injuries suffered by children but to encourage landlords to actively eliminate lead substances from their buildings or not use them at all. Plaintiff's injuries due to lead poisoning are precisely the type of injury that the Act was designed to prevent. Clearly, a private right of action is implied by this statute.

Finally, if plaintiff is denied a private right of action, her injuries will not be adequately redressed. While under section 12 of the Act (410 ILCS 45/12 (1996)) any violations are reported to the State's Attorney, who is authorized to charge the owner with a Class A misdemeanor and to insure that rent is withheld, this appears to be an inadequate method of redressing lead-poisoning injuries. Here, where lead-poisoned children often belong to low income families, a criminal conviction would probably do little to ameliorate their condition. To quote our supreme court in *Corgan v. Muehling*:

> "It is unlikely that patients, injured by unqualified and unregistered psychologists, will initiate or pursue their complaints through the administrative or criminal justice system without a potential for a tangible reward. A private right of action *** is the only way that an aggrieved plaintiff can be made whole ***." *Corgan*, 143 Ill. 2d at 315, 574 N.E.2d at 610.

Defendants argue that a negligence action is adequate to address plaintiff's injury. However, to prevail in a negligence action, plaintiff

must satisfy the notice requirement. We agree with plaintiff that a landlord could "hide his head in the sand" and never receive actual or constructive notice of a lead hazard in his building. For this reason, a negligence action alone would not be an adequate remedy.

For the foregoing reasons, we reverse the lower court's dismissal of plaintiff's complaint for failure to state a cause of action.

Reversed and remanded.

McNAMARA, J., concurs.

JUSTICE WOLFSON, specially concurring in part and dissenting in part:

I agree that the Chicago Municipal Code creates a private right of action for the kind of landlord conduct alleged in the plaintiff's complaint. I am unable to agree that a strict liability cause of action may be found in the Illinois Lead Poisoning Prevention Act (410 ILCS 45/1 *et seq.* (West 1994)).

The Act refers to certain landlord conduct being "prima facie evidence of negligence" (410 ILCS 45/15 (West 1994)). Since the Act creates a negligence action of sorts, I believe the General Assembly did not intend, by its silence, to create a broader, easier-to-prove strict liability action. I respectfully dissent from that part of the majority's opinion.