BEN SIWA, as Special Adm'r of the Estate of Victor Siwa, Deceased, Plaintiff-Appellant, v. DONALD KOCH *et al.*, Defendants-Appellees (Julio Rossi, Defendant).

First District (2nd Division)   No. 1—06—3552

Opinion filed February 10, 2009.

Randall F. Peters & Associates, of Chicago (Randall F. Peters, of counsel), for appellant.

Swanson, Martin & Bell, LLP, of Chicago (Timothy G. Nickels and Arthur J. Reliford, Jr., of counsel), for appellees Donald Koch and Village Radiology, Ltd.

Cassiday Schade, LLP, of Chicago (John N. Seibel, Brian A. Schroeder, and David W. Lewarchik, of counsel), for appellee West Suburban Hospital Medical Center.

JUSTICE CUNNINGHAM delivered the opinion of the court:

In June 2002, the plaintiff, Ben Siwa, as the special administrator of the estate of Victor Siwa (Victor), deceased, filed this medical malpractice action in the circuit court of Cook County against the defendants, Dr. Donald Koch (Dr. Koch), Village Radiology, Ltd. (Village Radiology), West Suburban Hospital Medical Center (West Suburban Hospital), and Dr. Julio Rossi.[1] The plaintiff alleged that the defendants failed to adequately warn Victor of the seriousness of his abnormal heart condition, which was discovered during the testing of computed tomography (CT) cardiac scanning equipment at West Suburban Hospital. The plaintiff also alleged that the defendants failed to provide adequate follow-up care for Victor, resulting in his death. Summary judgment for the defendants was entered by the circuit court of Cook County, in June 2006, and this appeal was filed by the plaintiff. The first issue raised by the plaintiff on appeal is whether Dr. Koch and Victor had established a physician-patient relationship, thus establishing a duty of care owed to Victor by Dr. Koch. The second issue is whether causation was established. The final issue is whether summary judgment for the defendants was improper because deposition testimony concerning statements made by Victor should have been barred by the trial court under the Dead-Man's Act (735 ILCS 5/8—201 (West 2002)). For the following reasons, we affirm the ruling of the circuit court of Cook County.

BACKGROUND

Dr. Koch was a staff radiology physician for Village Radiology, which had an agreement with West Suburban Hospital to provide

---

[1]Dr. Rossi was voluntarily dismissed in the proceedings below and is not a party to this appeal.

radiological diagnostic services. These services were provided by physicians employed by Village Radiology. In the summer of 2000, new software was installed on a CT scanner belonging to West Suburban Hospital. The scanner was to provide cardiac scanning. It was decided that the new software needed testing. This testing was to determine whether the software and the scanner worked properly and also to help train Dr. Koch in the use of the computer software and analysis of the results of the coronary CT scans produced by the scanner. On June 16, 2000, Victor, who was employed by West Suburban Hospital as a clinical coordinator for the CT area, volunteered to undergo a scan as part of this testing and training operation. The evidence is that Victor volunteered; he was not instructed to undergo this testing by West Suburban Hospital, Dr. Koch, or anyone else. It is also clear that there was no expectation by Victor that he was to receive the results of this exam, in the manner which would be expected by a regular patient, because the exam was not considered to be diagnostic in nature but rather a test of the equipment and software. Prior to the testing, Dr. Koch did not know that Victor was one of the volunteers. Nonetheless, when Dr. Koch began examining the data produced during the testing, he came upon the scan results for Victor, whom he knew personally. While examining Victor's scan, Dr. Koch determined that Victor's coronary artery calcification score was abnormally high. Had the case gone to trial, the plaintiff's experts would have testified that Dr. Koch should have recorded these findings in a written medical report of the type found in hospital medical records. Dr. Koch's deposition testimony was that such a written report would only be completed for a patient. Victor was not a "patient" in the commonly accepted use of the word. Rather, he was an employee with management responsibilities who voluntarily participated in the testing and training process related to the new software and scanner. Nevertheless, Dr. Koch stated in his deposition that he was alarmed by the results of Victor's scan and on two occasions he spoke directly to Victor and urged him to make an appointment to see a cardiologist. The first conversation occurred on the day Dr. Koch first saw Victor's results. According to Dr. Koch, Victor said that he had already been informed of his scan results by another person. Four or five days later, Dr. Koch spoke to Victor a second time and learned that he had not yet made the appointment with a cardiologist. Dr. Koch testified that he strongly urged Victor to make the appointment, telling him that he was at risk for a heart attack and saying, "God damn it, Victor, your score is high enough that you need to see a cardiologist now." Several days later Victor apparently scheduled an appointment with a cardiologist, but before he could keep the appointment he suffered a fatal

heart attack while playing basketball. Based largely upon this evidence and the pleadings, the circuit court granted the defendants' motions for summary judgment. This appeal followed.

## ANALYSIS

We review the granting of summary judgment *de novo*, construing all of the evidence strictly against the party who sought that judgment. *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 308, 882 N.E.2d 525, 528 (2008). Summary judgment is granted when after reviewing the pleadings, depositions and affidavits no genuine issue of material fact exists. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 421, 592 N.E.2d 1098, 1100 (1992).

In a medical malpractice action, the plaintiff must establish that the defendant or defendants owed a duty to the plaintiff (or here Victor, as represented by the plaintiff), that the duty was breached, and that an injury and damages were directly and proximately caused by that breach. *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80, 85, 660 N.E.2d 235, 238 (1996). A physician's duty arises only when a clear and direct physician-patient relationship has been established. *Reynolds*, 277 Ill. App. 3d at 85, 660 N.E.2d at 239. The *Reynolds* court found that no physician-patient relationship was established between a physician who was consulted by telephone and the patient in that case. The *Reynolds* court stressed that a physician-patient relationship cannot be established where a patient does not seek that physician's medical advice and the physician does not knowingly accept that person as a patient. *Reynolds*, 277 Ill. App. 3d at 85, 660 N.E.2d at 239.

In this case, it is clear from the pleadings, depositions, and affidavits that Victor was not Dr. Koch's patient. Dr. Koch did not even know that Victor was one of the volunteers who would participate in the test of the software and equipment. He discovered Victor's participation when he reviewed the results of Victor's scan. Dr. Koch was not sought out by Victor himself or by any other physician caring for Victor, to render medical advice. Dr. Koch was not tasked with evaluating Victor's health; his assignment was to evaluate the accuracy and methodology associated with the new software and equipment. Dr. Koch went beyond any duty owed to Victor when he voluntarily warned Victor of the potential danger suggested by the result of the scan. Dr. Koch then gave Victor appropriate advice, twice urging him to see a cardiologist. The plaintiff, Ben Siwa, as administrator of Victor's estate, has failed to establish any legal duty owed by Dr. Koch to Victor, arising from the giving of the advice. Under the principles enunciated in *Reynolds*, 277 Ill. App. 3d at 85, 660 N.E.2d

at 238, no physician-patient relationship was established, and thus no duty of care could have extended from Dr. Koch to Victor.

Unlike the cases cited by the plaintiff, Dr. Koch did not take an active role in Victor's care at the request of other physicians who were treating Victor. The plaintiff relies upon *Bovara v. St. Francis Hospital*, 298 Ill. App. 3d 1025, 1031-33, 700 N.E.2d 143, 147-48 (1998), where two hospital physicians who had never seen the decedent were still found to have a special relationship with the decedent, creating a physician-patient relationship. Factors relied upon by the court in that case included the fact that the physicians worked for the hospital where the decedent was admitted, their advice was sought out by the decedent's physician, and they prescribed the fatal procedure that was performed on the decedent. The other special relationship cases relied upon the by the plaintiff also bear no resemblance to the facts of this case. In *Lenahan v. University of Chicago*, 348 Ill. App. 3d 155, 166, 808 N.E.2d 1078, 1087 (2004), a special relationship establishing a duty of care was found although the defendant physician never personally met the decedent. The decedent was admitted to the hospital where the defendant physician was responsible for determining the decedent's eligibility for enrollment in an experimental high dose chemotherapy regimen and monitoring the decedent's progress. This was done by the defendant physician without actually interacting with the decedent in a personal way. Yet, under the facts of that case, it clearly sufficed to establish a special relationship. Those facts are inapposite to the instant case. In *Davis v. Weiskopf*, 108 Ill. App. 3d 505, 506, 439 N.E.2d 60, 61 (1982), a special relationship establishing a duty of care was found where an emergency room physician consulted with the defendant physician about X-rays of the plaintiff's right knee and the defendant physician agreed to see the plaintiff, but postponed several appointments with the plaintiff, resulting in the amputation of the plaintiff's leg.

██ In the case before us, it is clear that no duty can be based upon a special relationship between Dr. Koch and Victor, as the plaintiff suggests. As explained, the facts of this case differ significantly from those in the cases cited by the plaintiff. Dr. Koch never served as an advisor to any of Victor's physicians, nor was he directly or indirectly treating Victor for any malady or condition. He merely chose to warn Victor of what the scan inadvertently revealed. It is uncontroverted that Dr. Koch came upon Victor's scan results by happenstance while engaging in the testing and training exercise regarding the new equipment and software. Despite his lack of a duty to Victor, Dr. Koch persisted in trying to convince Victor to see a cardiologist. As a matter of law Dr. Koch owed no duty of care to Victor. Accordingly we find

that the trial court properly granted summary judgment to Dr. Koch. Any liability on the part of the West Suburban Hospital and Village Radiology is necessarily derived from the liability of Dr. Koch, who worked for or was an agent of those entities. Therefore, summary judgment was also properly entered for West Suburban Hospital and Village Radiology.

■ The lack of a duty of care in itself suffices to justify affirming the circuit court's ruling. But we also uphold that court's judgment on an independent basis, since the plaintiff's allegations fail to establish that the defendants' actions or inaction proximately caused Victor's death. We agree with the defendants that we are presented with a question of law on the issue. The facts as alleged establish that the plaintiff, on behalf of Victor, would never be able to establish proximate cause. See *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 520-21, 513 N.E.2d 387, 393-94 (1987). In accordance with the reasoning in *Kirk*, foreseeability is not to be construed so as to find a defendant liable for every injury that could possibly occur. *Kirk*, 117 Ill. 2d at 520, 513 N.E.2d at 393, citing *Winnett v. Winnett*, 57 Ill. 2d 7, 12, 310 N.E.2d 1, 4-5 (1974). Examining the factual allegations in this case establishes a lack of foreseeability. It was not reasonably foreseeable that Victor would delay seeing a cardiologist despite the strongly worded and repeated urging of Dr. Koch. Nor was it reasonably foreseeable that Victor, a 40-year-old man with no apparent health issues, would die of a heart attack while playing basketball. Furthermore, there was no medical evidence presented that seeing a cardiologist would have prevented the heart attack. The plaintiff argues strongly that Dr. Koch should have prepared a written report regarding Victor's condition. But there was no evidence that preparation of a written report by Dr. Koch concerning Victor's condition would have changed the outcome. After all, Dr. Koch verbally gave Victor the necessary information twice: see a cardiologist. Even assuming that immediately seeing a cardiologist would have saved Victor's life, it was Victor who made the choice not to immediately obtain such a consultation. Thus, the plaintiff would not be able to establish the element of foreseeability regarding Dr. Koch's actions.

■ We also find unavailing the plaintiff's claim that under the Dead-Man's Act no testimony concerning conversations with Victor should have been permitted. This argument suggests that not only conversations, but testimony regarding Victor's behavior should have been barred as well. The testimony of two witnesses, both former West Suburban employees, Dennis Gumpert and Christine Medina, established that Victor volunteered to participate in testing the scanner and was not ordered to do so. Their testimony also established

that if Victor was being examined as a patient he would have been registered as a patient. Gumpert was the administrative director of radiology for West Suburban and Victor's direct supervisor at the time of the occurrence. He testified that he heard the conversations between Victor and Dr. Koch in which Dr. Koch urged Victor to immediately see a cardiologist and Victor finally stated that he would make an appointment. While this is an interesting argument, this is a case in which the principle of forfeiture applies as the plaintiff never made the Dead-Man's Act (the Act) objection in the circuit court before that court's entry of the orders of summary judgment. But even on the merits we would find that the testimony of Gumpert and Medina did not violate the Act. The Act only bars testimony by adverse parties or those directly interested in the outcome of the action. 735 ILCS 5/8—201 (West 1996). Neither Gumpert nor Medina had any financial or other interest in the outcome of the case, and they were no longer employees of West Suburban Hospital when they were deposed, nor were they defendants in the case. *Bernardi v. Chicago Steel Container Corp.*, 187 Ill. App. 3d 1010, 1018, 534 N.E.2d 1004, 1010 (1989).

For all of these reasons, we affirm the judgment of the circuit court of Cook County granting summary judgment to the defendants.

Affirmed.

THEIS and QUINN, JJ., concur.