NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued May 19, 2010
Decided July 28, 2010

**Before**

Hon. Joel M. Flaum,  *Circuit Judge*

Hon. Daniel A. Manion,  *Circuit Judge*

Hon. David F. Hamilton,  *Circuit Judge*

No. 09-2983

Joseph Barnes,
            *Plaintiff-Appellant*,

    *v.*

Jovita Anyanwu,
             *Defendant-Appellee*.

Appeal from the United States District
Court for the Northern District of
Illinois, Eastern Division.

No. 1:00 CV 06280

**James B. Zagel**, *Judge*.

**O R D E R**

Joseph Barnes, an Illinois prisoner, thought he had hepatitis and wanted to be tested. He made several requests and filed several grievances at the prison.  All were denied.  One of his grievances was denied by Dr. Jovita Anyanwu, the prison's acting medical director. Believing that denial caused him emotional distress, Barnes sued the doctor for negligent infliction of emotional distress.  The district court granted summary judgment for the doctor, concluding that because the emotional distress did not accompany any physical

impact Barnes could not prevail. Because in three previous cases we have upheld the reasoning used by the district court and we find no reason to break from that reasoning, we affirm.

I.

In August 1999, Joseph Barnes was concerned that he had contracted hepatitis, and he wanted to be tested. Several times he asked the nurses and doctors at the prison to test him, but his requests were denied; he then filed several grievances. In response to one of the grievances, Dr. Anyanwu, a medical supervisor at the prison, denied Barnes's grievance and told him to follow the proper sick-call procedures.

After repeatedly seeking and being denied a hepatitis test, Barnes filed suit under § 1983 for deliberate indifference against the warden, a nurse, and another doctor at the prison, but not against Anyanwu. Barnes was eventually tested, and it turned out that he did, in fact, have hepatitis. He was treated, and we're told that he is now cured. Despite being treated and cured, Barnes continued to pursue his suit.

The district court initially dismissed the suit for Barnes's failure to exhaust his administrative remedies, but on appeal we reversed and remanded it for further proceedings. *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005). At some point in the litigation, Barnes amended his complaint, alleging a negligent infliction of emotional distress claim under Illinois law and a deliberate-indifference claim against Anyanwu. Both claims were premised on Anayanwu's denying Barnes's grievance and instructing him to follow the prison's sick-call procedures. Barnes eventually settled with the other defendants but continued to pursue his claims against Anyanwu.

Anyanwu moved for summary judgment on both claims. Barnes conceded that he could not recover on his deliberate indifference claim, but contested summary judgment on the state-law claim. Barnes did not allege that the Anyanwu ever performed a botched medical procedure, just that Anyanwu denied his grievance and told him to follow the sick-call procedures. Relying on our precedent, the district court granted summary judgment for Anyanwu. It held that because Illinois requires direct victims to establish an impact, i.e., "a contemporaneous physical injury or impact" in these cases, Barnes cannot recover.

On appeal, Barnes argues that Illinois courts have interpreted the "impact rule" inconsistently and, given the nature of doctor-patient relationships, that we should carve

out an exception to it for medical malpractice cases.  In the alternative, he asks that we certify the question to the Illinois Supreme Court.

II.

We review de novo the district court's grant of summary judgment.  *Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009).   Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  And when sitting in diversity, we apply state substantive law.  *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007).  Here, the parties agree that Illinois law governs.

As an initial matter, it is questionable whether this is a medical malpractice case.  In Illinois to recover in a medical malpractice case, a plaintiff must prove a duty owed by the defendant physician, a breach of that duty, an injury proximately caused by the breach, and resultant damages.  *Smith v. Pavlovich*, 914 N.E.2d 1258, 1266 (Ill. App. Ct. 2009).  A physician's duty is limited to those situations where a direct physician-patient relationship exists.  And that "relationship cannot be established where a patient does not seek that physician's medical advice and the physician does not knowingly accept that person as a patient."  *Siwa v. Koch*, 902 N.E.2d 1173, 1176 (Ill. App. Ct. 2009).  Here, Anyanwu was merely acting as a hospital administrator when he denied Barnes's grievance; he was not acting as a  physician and certainly not Barnes's treating physician.  From the record, there was no relationship between the two that would make this a medical malpractice case. Putting that issue to the side for a moment, we first consider Illinois law governing negligent infliction of emotional distress.

Before 1983, in all cases of negligent infliction of emotional distress, Illinois courts adhered to the "impact  rule."  Under it, recovery was tied to whether the emotional distress accompanied a contemporaneous physical injury or impact to the plaintiff.  *Hayes v. Illinois Power Co.*, 587 N.E.2d 559, 561 (Ill. App. Ct. 1992).  But then the Illinois Supreme Court adopted a new standard for cases involving bystanders called "the zone of physical danger rule." *Rickey v. Chicago Transit Author.*, 457 N.E.2d 1, 5 (Ill. 1983).  Basically, after *Rickey*, victims of negligent infliction of emotional distress were put in two categories: direct victims and bystanders.  *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). Direct victims are the persons that the negligent conduct has directly affected; they are the ones that are actually physically injured by the defendant's negligent conduct.  To fall in this category the plaintiff must suffer some contemporaneous physical contact that caused the emotional distress.  Meanwhile, bystanders are those who are in the zone-of-physical

danger and who because of the defendant's negligence fear for their own safety, which caused them emotional distress and a physical injury or illness from the emotional distress. *Rickey*, 457 N.E.2d at 5.

Under the rubric in *Rickey*, bystanders don't have to suffer a physical impact or injury at the time of the negligent act, but they must have been in such proximity to the accident that there was a high risk and fear of physical impact to them. *Id.* And—and this is an important "and"—bystanders must show a "physical injury or illness as a result of the emotional distress caused by the defendant's negligence." *Id.* The decision in *Rickey* did not discard the impact rule for direct victims of negligent infliction of emotional distress. It only concerned bystanders. *Hayes*, 587 N.E.2d at 561 ("The court in *Rickey* was solely concerned with defining the parameters of *bystander* recovery." (quotation omitted)).

Barnes argues that nine years later the Illinois Supreme Court in *Corgan v. Muehling*, 574 N.E.2d 602 (Ill. 1991), followed *Rickey*'s lead and got rid of the impact rule for direct victim cases. But that's not what the court did in *Corgan*. In that case, a patient sued a man who held himself out as a psychologist and to whom she went for treatment. Under the guise of "therapy," he sexually exploited her. *Id.* at 603. She claimed that his "methods" caused her severe emotional distress; specifically, his conduct caused her "fear, shame, humiliation and guilt." *Id.* The precise issue in *Corgan* was whether "direct victims must set forth the pleading requirements established in *Rickey* when stating a cause of action for negligent infliction of emotional distress." *Id.*

The court held that the higher burden established in *Rickey* for bystander cases—that the plaintiff allege a "physical injury or illness as a result of the emotional distress caused by the defendant's negligence"—did not apply in direct victim cases. *Id.* at 607. *Corgan* was a direct-victim case, and the patient satisfied the impact rule: on multiple occasions, the psychologist had sex with her. The issue was whether her alleged harms of "fear, shame, humiliation and guilt" were sufficient to recover. *Id.* at 603. They would fail under the "zone of physical danger" test in *Rickey* for bystander cases. *Leonard v. Kurtz*, 600 N.E.2d 896, 898 (Ill. App. Ct. 1992) ("*Rickey* requires an allegation that plaintiff suffered physical injury or illness as a result of the emotional distress."). But those allegations are sufficient for direct victims. Thus, because she was a direct victim, *Corgan* stands an example of the continued application of the impact rule.

Consistent with this understanding of *Corgan* and Illinois tort law, we have held on three separate occasions that the impact rule applies to direct victims: *Kapoulas v. Williams Ins. Agency*, 11 F.3d 1380, 1384–85 (7th Cir. 1993); *Cleveland v. Rotman*, 297 F.3d 569, 574 (7th

Cir. 2002); *Lewis*, 561 F.3d at 703 (noting "a direct victim of alleged negligent infliction of emotional distress must satisfy the impact rule."). Despite this consistency on our part, not all Illinois courts, including some federal district courts, have applied the impact rule to direct victims.

Barnes seizes on this inconsistency and argues that it portends either the abolition of the rule by the Illinois Supreme Court or the Court's recognition of an exception for medical malpractice cases. Under *Erie* our job is to predict how a state's highest court will decide a question of state law. *Pisciotta*, 499 F.3d at 634. We have already done that, on three occasions. Nothing since our earlier decisions suggests that the Illinois Supreme Court would hold differently than what we predicted in those three previous cases.

Indeed, a persuasive argument for finding that the impact rule has been abolished by the Illinois Supreme Court is in *Pasquale v. Speed Products Engineering*, 654 N.E.2d 1365, 1372 (Ill. 1995). Although dicta, the language is unequivocal: "*Corgan*, however, extended *Rickey*'s elimination of the impact rule to instances where plaintiffs were the direct victims of the negligent conduct and suffered emotional distress injury." *Id.* at 1372. But since then two Seventh Circuit cases have rejected the argument that the impact rule no longer applies for direct victims. *Cleveland*, 297 F.3d at 574 (decided in 2002); *Lewis*, 561 F.3d at 703 (decided in 2009). And once we have settled on the state law to be applied in a diversity case, that precedent should be followed, unless there is a subsequent state court decision or statutory amendment that renders that decision clearly wrong. *See Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995). Dicta or mere inconsistent application of the doctrine by some courts does not call into question our precedent from just a year ago or suggest that the Illinois Supreme Court would treat the question differently, if it decided this case. *See* 19 Wright & Miller, *Federal Practice & Procedure* § 4507 (noting circumstances that indicate a break from a state supreme court's precedent).

And there is no indication from case law or any general trend in Illinois that suggests the Illinois Supreme Court would hold that the impact rule does not apply in medical malpractice cases. Along with the lack of evidence that such an exception would be recognized, that is a pure policy decision; the Illinois legislature or the Illinois Supreme Court can make that decision, but it should not be made by our court. *Alper v. Altheimer & Gray*, 257 F.3d 680, 689 (7th Cir. 2001). As we have noted before, "[f]ederal courts are loathe to fiddle around with state law." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000). And that is especially true when it comes to important matters of state tort law, where there is an inherent danger in us intruding on the state's development of its own law. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999).

As a final measure, Barnes asks that we certify the question to the Illinois Supreme Court to determine whether the direct impact rule applies in medical malpractice cases. One of the reasons that we certify questions to state supreme courts is to resolve questions that we are unsure of and to save judicial resources: "the right time to certify a question is before the first federal decision on the point. Certification eliminates the need to expend judicial resources predicting how another court will decide a question. Once we have invested the time and effort to make the prediction, the costs have been sunk." *Nat'l Cycle, Inc. v. Savoy Reinsurance Co.*, 938 F.2d 61, 64 (7th Cir. 1991). We have on three previous occasions addressed the question, and in this circuit at least, it is resolved: in order to recover for negligent infliction of emotional distress under Illinois law, a direct victim must show he suffered a physical injury or impact. There is no qualification for medical malpractice victims or any other special class of victims; Illinois has not carved out any categories when dealing with this in the past and there is no reason to suggest they would with this case. Thus, the petition to certify the question is denied.

III.

Therefore, we reaffirm our holding that under Illinois law, a direct victim of negligent infliction of emotional distress must establish a contemporaneous physical injury or impact. This includes cases of medical malpractice. And we deny Barnes's motion to certify the question to the Illinois Supreme Court. Accordingly, the judgment of the district court is AFFIRMED.